135 S.E.2d 675 (1964)
C. Donald ROBERTSON et al.
v.
Lewis A. HATCHER et al.
No. 12306.
Supreme Court of Appeals of West Virginia.
Submitted January 29, 1964.
Decided February 7, 1964.
Opinion Filed April 14, 1964.
*677 C. Donald Robertson, Atty. Gen., Andrew J. Goodwin, Asst. Atty. Gen., Charleston, for appellants.
Brooks Callaghan, Richwood, Robert L. Holland, West Union, Robert S. Jacobson, Marlinton, Charles M. Walker, Charleston, Pros. Attys., Charles R. McElwee, Charleston, as amicus curiae, for appellees.
CAPLAN, Judge.
This proceeding involves the constitutionality of Chapter 158 of the Acts of the Legislature, Regular Session, 1963, hereinafter sometimes referred to as the Act. Passed by the Legislature on March 1, 1963, this Act related to the division of the State into senatorial districts, apportionment of the membership of the house of delegates and congressional districts.
*678 The issue was raised in a declaratory judgment action instituted in the Circuit Court of Kanawha County by C. Donald Robertson as a resident, citizen and taxpayer of Harrison County and as the Attorney General of the State of West Virginia, together with certain prosecuting attorneys of this state who proceeded in their individual and official capacities. Named as defendants therein were Lewis Hatcher, Circuit Clerk of Kanawha County, Ruth Ellison, Circuit Clerk of Wirt County, and Earl L. Davis, Circuit Clerk of Doddridge County, each individually and as members of the class.
In their petition for a declaratory judgment the plaintiffs alleged, on information and belief, that "Enrolled Committee Substitute for House Bill No. 6, passed by the Legislature of the State of West Virginia on March 1, 1963 [Chapter 158, Acts of the Legislature, Regular Session, 1963], to take effect June 1, 1963, which apportions the membership of the House of Delegates of the State of West Virginia and the Senate of the State of West Virginia, and gives to each county a delegate and representative in the House of Delegates, and which gives to Kanawha County two additional Senators, and makes Kanawha County the Eighth and Seventeenth Senatorial Districts, is unconstitutional, and that these plaintiffs will be materially and adversely affected by Enrolled Committee Substitute for House Bill No. 6, * * *."
It is further alleged in the petition that if the Act were allowed to take effect, not only the plaintiffs, but all other citizens and residents of the respective counties named, and other citizens, residents and taxpayers similarly situated, will be adversely affected in that these counties will be denied their fair representation in the Legislature. The petition concludes with a prayer that the Act be declared unconstitutional and that the defendants be restrained and enjoined from exercising any power, rights or duties respecting the enforcement of the Act insofar as it purports to apportion the membership of the House of Delegates and the Senate of the State of West Virginia.
Thereafter certain members of the House of Delegates filed a motion to intervene in this proceeding as parties defendant in their individual and representative capacities. In support of their motion to intervene they alleged that they were citizens, residents and taxpayers of, and represented in their official capacities, the twelve counties which would be deprived of their representation in the House of Delegates if the Act under consideration should be declared unconstitutional. They further alleged that their interests were different from and adverse to those of the original parties defendant and that they were not being adequately represented before the court. A motion to intervene as parties plaintiff was also filed by the members of the House of Delegates from Logan County. There being no objection thereto, these motions were granted.
Pursuant to a hearing before the Circuit Court of Kanawha County on August 24, 1963, concerning pretrial motions in which the defendants asserted that the action should be dismissed for failure to state a claim upon which relief could be granted and for failure to include necessary parties plaintiff and defendant, the said court, by written opinion, required the plaintiffs to allege more clearly that a class action existed and that further parties defendant be included. Leave was granted to the plaintiffs to so amend their complaint.
In order to comply with the court's directions, the plaintiffs filed an amended complaint which included as parties defendant the circuit clerks of the twelve counties which would be affected if this Act were declared unconstitutional. Also included were the plaintiff and defendant interveners. Thereafter, certain motions and answers were filed by the additional parties defendant and the case was heard on its merits.
*679 By its order entered on January 10, 1964, the Circuit Court of Kanawha County ruled that Section 2 of Chapter 158, Acts of the Legislature, Regular Session, 1963, was unconstitutional in that it attempted to give to each county in the state a representative in the House of Delegates and for the reason that it failed to provide delegate districts as required by the Constitution; that Section 1 of said Act was constitutional in that the "superimposing" of the Seventeenth Senatorial District upon the Eighth Senatorial District did not violate Article VI, Section 4, of the Constitution of the State of West Virginia; and that as all issues raised were decided, the action was stricken from the docket.
The plaintiffs filed their petition for appeal from the judgment of the Circuit Court of Kanawha County, which petition was granted by this Court. Thereafter, the defendant and defendant-interveners filed cross-assignments of error to the said judgment. By stipulation signed by counsel for all of the parties to this proceeding it was agreed that the matter was matured and ready for hearing. Consequently, on January 28, 1964, the case was submitted for decision in this Court upon the arguments and briefs of counsel, and upon the brief of The League of Women Voters, which was permitted to file such brief as amicus curiae.
The assignments and cross-assignments of error give rise to the following questions on this appeal: (1) Does this proceeding constitute a class action? (2) Were the proper and necessary parties before the court in this proceeding? (3) Does a justiciable controversy exist between the parties which can be determined in a declaratory judgment proceeding? (4) Is Chapter 158, Acts of the Legislature, Regular Session, 1963, constitutional?
On February 7, 1964, this Court, by order, held that this proceeding constituted a class action; that the necessary and proper parties were before the trial court; that the issues presented constituted a justiciable controversy which could be determined in a declaratory judgment proceeding; and that Chapter 158, Acts of the Legislature, Regular Session, 1963, was unconstitutional and void. This opinion is now filed for the purpose of stating the reasons for the holdings in the aforesaid order.
In relation to the first issue, it has not been contended that this proceeding could not be instituted as a class action. Rather, the defendants assert that the plaintiffs did not proceed in a manner so as to constitute their action a class action.
Certainly, class suits have long been used in equity where it was impracticable to bring into court all interested persons. City of Grafton v. Holt, Judge, 58 W. Va. 182, 52 S.E. 21. With the adoption of the West Virginia Rules of Civil Procedure the procedural distinctions between law and equity have been abolished. R. C.P., Rule 2. A further authorization for the institution of a class action is contained in the aforementioned Rules. Rule 23(a) provides in part: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is (1) * * * common * * *." This language is merely declaratory of the principles formerly applied to class suits in equity.
Whether the persons constituting a class are "so numerous as to make it impracticable to bring them all before the court" depends upon the circumstances in each case, and whether to permit a class action on this basis rests in the sound discretion of the trial court. Lugar & Silverstein, W.Va.Rules, p. 194. In the instant case, the plaintiffs sought to proceed against three circuit clerks as being representative of the class. The persons constituting that class were the thirteen circuit clerks whose counties would be *680 affected by this Act. The trial court, having found that the members of the class were not so numerous as to make it impracticable to bring them all before the court, required the plaintiffs to amend their complaint so as to include as parties defendant, all of the circuit clerks against whom they were proceeding. This was a proper exercise of the court's discretion.
In their original complaint the plaintiffs instituted this action as citizens, residents and taxpayers of their respective counties, as prosecuting attorneys thereof and as the Attorney General of the State of West Virginia. Instituted in this manner, certain elements of a class action were lacking, the class sought to be represented being every citizen and voter of this state. The trial court said that all the members of the class can be adequately represented only through the institution of a class action, and granted plaintiffs leave to amend their complaint to correct this omission.
Pursuant to the action of the court the plaintiffs amended their complaint so that the action was instituted as follows: "The plaintiffs bring this action on behalf of themselves and all other persons similarly situated who are citizens of the various counties, such persons being so numerous as to make it impracticable to bring them all before the court; and the right which is subject of this action is common to all of the citizens of the various counties." This allegation fulfills the requirements of a class action as set out in R.C.P., Rule 23(a). We are therefore of the opinion that the proceeding in the court below constituted a proper class action.
The defendants next contend that necessary and indispensable persons were not made parties defendant in this proceeding and that such absent persons could not be affected, therefore, by any decision resulting therefrom. The numerous defendants in this case represent all of the counties which the plaintiffs allege are not entitled to representation in the House of Delegates. It is evident that these defendants have placed into issue the entire merits of the controversy, thereby fully representing those situated similarly to the said defendants. The rights and interests of the persons about whose absence the defendants complain are fully protected.
We have fully considered the other contentions of the defendants in relation to the propriety of the parties to this proceeding and find no error in the action of the court below.
The third issue raised on this appeal is whether a justiciable controversy exists between the parties which can be determined in a declaratory judgment proceeding. In relation thereto it is asserted by the defendants that an actual controversy did not exist at the time the action was instituted as no legal right had been claimed by the plaintiffs and denied by the defendants. In resolving this issue it is necessary to consider the provisions of Chapter 55, Article 13 of the West Virginia Code, 1931, as amended, known as the Uniform Declaratory Judgments Act.
Section 1 thereof provides, in part: "Courts of record * * * shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." Section 2 provides: "Any person * * * whose rights, status or other legal relations are affected by a statute, * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder." It is provided in Section 3 that "A contract may be construed either before or after there has been a breach thereof." Section 12 provides: "This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."
Notwithstanding the apparent wide latitude of jurisdiction conferred by the above cited and quoted act, and even though *681 the act does not in express terms require the existence of a justiciable controversy, this Court consistently has held that such controversy must exist before a court can acquire jurisdiction. Town of South Charleston v. Board of Education of the County of Kanawha, 132 W.Va. 77, 50 S.E. 2d 880; Chesapeake & Potomac Telephone Co. of West Virginia v. City of Morgantown, 144 W.Va. 149, 107 S.E.2d 489; Board of Education of Wyoming County, et al. v. Board of Public Works, et al., 144 W.Va. 593, 109 S.E.2d 552; Crank v. McLaughlin, 125 W.Va. 126, 23 S.E.2d 56. Whether a justiciable controversy exists depends upon the facts at the time the proceeding is commenced. Board of Education of Wyoming County, et al. v. Board of Public Works, et al., supra; Town of South Charleston v. Board of Education of the County of Kanawha, supra.
In Farley v. Graney, W.Va., 119 S.E.2d 833, the plaintiff, in a declaratory judgment proceeding, sought a declaratory as to the validity of a certain act designed to impose specified regulations on the maintenance of a junk yard. The defendant was charged with the enforcement of the act. Although the act was in effect when the proceeding was commenced, the plaintiff was not obligated to comply therewith until a later date. In relation to the contention that no justiciable controversy existed when the action was instituted, the Court said: "The controversy between the plaintiff and the defendant is actual, existing and justiciable in the sense that the defendant has made evident his purpose to enforce provisions of the statute and that such enforcement will directly and materially affect the rights of the plaintiff. * * * The controversy was actual, existing and justiciable in that the unconstitutionality of the statute, designed to have a material effect on the plaintiff's property rights, was asserted by the plaintiff and denied by the defendant."
Quoting from Hoagland v. Bibb, 12 Ill. App.2d 298, 139 N.E.2d 417, at page 420, the Court in the Farley case further said: "The amendatory act was certain to take effect. In the absence of an adjudication declaring its invalidity, it is to be presumed that those officials charged with its enforcement will do their duty and enforce it."
In the instant case the Legislature has enacted a statute which apportioned the membership of the House of Delegates and Senate of the State of West Virginia. This Act became effective on June 1, 1963, prior to the institution of this declaratory judgment proceeding. In said proceeding the plaintiffs claim that the Act is unconstitutional and allege that the defendants are circuit clerks of various courts who will be charged with the duty of accepting the filings for candidacy for election to the House and, in the case of Kanawha County, both the House and Senate. Inasmuch as the Act was in effect, in the absence of an adjudication declaring its invalidity, it is presumed that the defendants will do their duty and enforce it. In this circumstance the right claimed by the plaintiffs would certainly be denied. To hold otherwise would destroy the purpose and effect of proceedings instituted under the declaratory judgments act.
"An actual controversy susceptible of judicial determination, however, exists when a legal right is claimed by one party and denied by another party to a declaratory judgment proceeding." Board of Education of Wyoming County, et al. v. Board of Public Works, et al., 144 W.Va. 593, 109 S.E.2d 552. In view of the authorities cited and quoted herein, we are of the opinion that a justiciable controversy existed which could be determined in a declaratory judgment proceeding.
We come now to the principal issue in this proceeding, namely, the constitutionality of Chapter 158 of the Acts of the Legislature, Regular Session, 1963. This Act consists of three sections. Section 1 relates to the creating of senatorial districts; Section 2 provides for the apportionment of the membership of the house *682 of delegates; and Section 3 creates congressional districts. No question having been raised as to congressional districts, Section 3 will not be considered herein.
As hereinbefore noted, the Circuit Court of Kanawha County held that Section 1 of the Act was constitutional. In their appeal from that ruling the plaintiffs' petition contains one assignment of error. They allege that the designation of Kanawha County as the Eighth and Seventeenth Senatorial Districts is violative of Article VI, Section 4 of the Constitution of West Virginia in that the Seventeenth District is superimposed upon the Eighth. It may be noted here that the only amendment of the former apportionment law by Section 1 of the 1963 Act was the addition of the Seventeenth Senatorial District.
Article VI, Section 4 of the Constitution of West Virginia, relating to the division of the state into senatorial districts, reads as follows:
"For the election of Senators, the State shall be divided into * twelve Senatorial Districts, which number shall not be diminished, but may be increased as hereinafter provided. Every district shall elect two Senators, but, where the district is composed of more than one county, both shall not be chosen from the same county. The districts shall be compact, formed of contiguous territory, bounded by county lines, and, as nearly as practicable, equal in population, to be ascertained by the census of the United States. After every such census, the Legislature shall alter the Senatorial Districts, so far as may be necessary to make them conform to the foregoing provision.
"[* There are now sixteen senatorial districts, as provided by Acts 1937, cc. 128. See § 6 of the Code.]"
For the creation of a senatorial district the above constitutional provision prescribes that such district shall be compact, formed or contiguous territory, bounded by county lines and, as nearly as practicable, equal in population. That the Seventeenth District, consisting of the whole of Kanawha County, is compact and is bounded by county lines can not be questioned. Since the Seventeenth District consists entirely of one county, the territory which forms it is necessarily contiguous. In accordance with the language of the above quoted constitutional provision, that district is formed of contiguous territory.
The fourth requirement in Section 4 is that districts shall be, as nearly as practicable, equal in population. The official census of 1960 reveals that Kanawha County had a population of 252,925, or more than 13.5 per cent of the entire population of the state. It then and still does constitute the Eighth Senatorial District. The other fifteen senatorial districts had a percentage of the population of the state ranging from 3.99 per cent in the Second District to 7.36 per cent in the First. With the addition of a senatorial district in Kanawha County, each district therein will represent 6.79 per cent of the state's population. Certainly such addition will bring a greater balance in representation to the senatorial districts of the state.
We are of the opinion that the Legislature, in establishing the Seventeenth Senatorial District, has complied with the four requirements enumerated in Article VI, Section 4 of the Constitution of West Virginia.
The plaintiffs contend that superimposition of the Seventeenth Senatorial District upon the Eighth Senatorial District constitutes a violation of Article VI, Section 4, of the West Virginia Constitution, although no reasons are given nor are any authorities cited in support thereof. An examination of Section 4 fails to reveal any inhibition against the superimposing of one senatorial district upon another. Our State Constitutional being a restriction of power rather than a grant of *683 power as is the Federal Constitution, the Legislature may enact any measure which is not specifically prohibited by the State or Federal Constitution.
This proposition has been succinctly stated by this Court. Quoting from Harbert v. County Court of Harrison County, etc., et al., 129 W.Va. 54, 39 S.E.2d 177, the Court, in Tanner v. Premier Photo Service, Inc., et al., W.Va., 125 S.E.2d 609, said: "* * The Legislature of this State, unlike the Congress of the United States under the Federal Constitution, does not depend for its authority upon the express grant of legislative power. The Federal Constitution is a grant of power; a State Constitution is a restriction of power. The Constitution of a State is examined to ascertain the restraints, if any, which the people have imposed upon the Legislature, not to determine the powers they have conferred. The Legislature of this State possesses the sole power to make laws and it is necessarily invested with all the sovereign power of the people within its sphere. Booten v. Pinson, 77 W.Va. 412, 89 S.E. 985, L.R.A.1917A, 1244." See also State ex rel. County Court of Marion County v. Demus, W.Va., 135 S.E.2d 352, decided at this term of Court.
In relation to legislative powers, the Court further said in the Harbert case, supra: "* * * that the general powers of the Legislature are almost plenary and that it can legislate on every subject not interdicted by the Constitution itself. The test of legislative power in this State is constitutional restriction, and what the people have not said in the organic law their representatives shall not do, they may do." See State ex rel. Cashman v. Sims, 130 W.Va. 430, 43 S.E.2d 805, 172 A.L.R. 1389; 4 M.J., Constitutional Law, Section 31 and cases cited in footnotes thereto.
There being no interdiction in Article VI, Section 4 of the West Virginia Constitution against the superimposition of one senatorial district upon another and, having determined that the requirements of said Section 4 have been fulfilled, we find, and so hold, that Section 1 of Chapter 158 of the Acts of the Legislature, Regular Session, 1963, is constitutional.
The defendants here contend that the Circuit Court of Kanawha County erred in holding unconstitutional Section 2 of Chapter 158 of the Acts of the Legislature, Regular Session, 1963. They take the position that the enactment and approval by the Legislature of a bill creates a presumption of constitutionality unless the contrary is made to appear affirmatively.
It is sufficient to note, without setting it out in full, that Section 2, Apportionment of Membership of the House of Delegates, provides that the House shall consist of one hundred six members and that by the provisions thereof each county in the state is allocated at least one delegate. The issue here is whether, in these circumstances, the Legislature has complied with Article VI, Sections 6 and 7 of the Constitution of West Virginia.
A determination of the number of which the House of Delegates shall consist is entirely within the province of the Legislature. Nothing in the Constitution limits this power. Therefore, the Legislature properly exercised its authority when it designated that the House shall consist of one hundred six members. We must now look to the Constitution to determine if this membership was apportioned in conformity with the pertinent provisions thereof.
The provision for delegate representation is found in Article VI, Section 6 of the Constitution of West Virginia and reads as follows:
"For the election of Delegates, every county containing a population of less than three-fifths of the ratio of representation for the House of Delegates, shall, at each apportionment, be attached to some contiguous county or counties, to form a Delegate District."
*684 Section 7 of the above Article provides for apportionment of delegates after each census in the following language:
"After every census the Delegates shall be apportioned as follows: The ratio of representation for the House of Delegates shall be ascertained by dividing the whole population of the State by the number of which the House is to consist and rejecting the fraction of a unit, if any, resulting from such division. Dividing the population of every Delegate District, and of every county not included in a Delegate District, by the ratio thus ascertained, there shall be assigned to each a number of Delegates equal to the quotient obtained by this division, excluding the fractional remainder. The additional Delegates necessary to make up the number of which the House is to consist, shall then be assigned to those Delegate Districts, and counties not included in a Delegate District, which would otherwise have the largest fractions unrepresented; but every Delegate District and county not included in a Delegate District, shall be entitled to at least one Delegate."
The application of the clear and unambiguous language of the above section to the population figures contained in the journal of the House of Delegates clearly reveals whether the apportionment provided in Section 2 of the Act was done in conformity with Article VI, Sections 6 and 7. The population of the state, 1,860,421, is divided by 106, the number of which the House is to consist. The result is 17,551, which is the ratio of representation for the House of Delegates, referred to in Article VI, Section 6. Three-fifths of such ratio of representation is 10,530 which, in accordance with the provisions of Section 6, is the number of persons a county must have if it is to be entitled to a delegate in the Legislature. The clear language of Section 6 unequivocally provides that any county with a population of less than three-fifths of the ratio of representation for the House of Delegates, 10,530 in this instance, shall be attached to some contiguous county or counties to form a delegate district. It is difficult to see how this could be more graphically stated to mean, in the circumstances of these proceedings, that if a county's population is less than 10,530, such county is not entitled to a delegate but must become a part of a delegate district.
An examination of the Official House Journal for February 5, 1963, which contains the official 1960 census, reveals that there are twelve counties in West Virginia, each of which has a population of less than 10,530. Clearly, under the provisions of Article VI, Section 6, these counties are not entitled to a delegate in the Legislature and the Act which so provided is patently unconstitutional. If a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision. In re Hillcrest Memorial Gardens, Inc., W.Va., 119 S.E. 2d 753; Appalachian Power Co. v. County Court of Mercer County, W.Va., 118 S.E. 2d 531; State ex rel. Zickefoose v. West, 145 W.Va. 498, 116 S.E.2d 398; Flesher v. Board of Review, 138 W.Va. 765, 77 S.E.2d 890; State ex rel. Trent v. Sims, 138 W.Va. 244, 77 S.E.2d 122.
The clear intention of the electorate as embraced in the language of Article VI, Sections 6 and 7 of our Constitution, is to accomplish a just and equitable apportionment of the membership in the House of Delegates after each official census. The necessity for establishing delegate districts in this case is couched in unquestionable language.
The defendants have relied primarily upon State ex rel. Armbrecht, et al. v. Thornburg, et al., 137 W.Va. 60, 70 S.E. 2d 73, in their efforts to sustain the constitutionality of Section 2, Chapter 158, *685 Acts of the Legislature, Regular Session, 1963. The issue in that case was the constitutionality of the Apportionment Act of 1951. There the relators asserted that the Act was unconstitutional for the reasons that (1) it was passed after the expiration of the constitutional period designated for a legislative session; and (2) the Act disregarded Article VI, Section 6 of the State Constitution in that it apportioned one delegate to certain counties not having three-fifths of the ratio of representation for the House of Delegates.
The Thornburg case, supra, is readily distinguishable from the instant case and is, therefore, not decisive here. In that case there was a complete absence of any matters in the legislative journals which in any manner made questionable the legislative findings. In other words, the Court held that it would not inquire into the truth or falsity of legislative findings when there was no ambiguity in the legislative records. When the 1951 Apportionment Act was passed, nothing in the journal or other legislative records disputed the finding that such act was passed during the constitutional period of time. Likewise, nothing appeared in the journal or legislative records which disputed the finding that all counties had a sufficient population to warrant the apportionment to each county of at least one delegate.
This is not so in the case now under consideration. The entry in the journal of the House of Delegates of February 5, 1963, setting out the official census, certified by the Director of the Bureau of Census, creates an ambiguity in the legislative findings. In the recent case of State ex rel. Heck's Discount Centers, Inc., et al. v. Winters, W.Va., 132 S.E.2d 374, this Court held that the courts will take judicial notice of the journals of both houses of the Legislature and other legislative records in determining whether constitutional provisions relating to the enactment of legislation have been complied with and observed. State v. Heston, 137 W.Va. 375, 71 S.E.2d 481.
The Court found no ambiguity in the legislative journals in the Thornburg case while, in the instant case, an ambiguity did exist by reason of the inclusion of the official census figures. This circumstance opened the door to a juristic determination of whether the pertinent constitutional provisions were being observed. From that evidence, the census figures in the journal, it is readily determinable that the House of Delegates was in error in its findings that each county in the state was entitled to a delegate. Clearly, this action was contrary to the plain language of Article VI, Sections 6 and 7 of the West Virginia Constitution. This ambiguity or conflict in the journal overcomes the presumption of constitutionality and permits the Court to consider the validity of the legislative findings.
The Court, in the Thornburg case, supra, finding no ambiguity or conflict in the legislative records, said: "We must assume that the Legislature made a finding as to all necessary facts warranting the enactment of the legislation, including the population of each county. There is nothing in the record of this proceeding which we consider in conflict with that presumption. In such case this Court will not consider the propriety or correctness of a finding of fact upon which the Legislature bases an act."
As heretofore stated, the distinguishing feature in the instant case was the ready appearance in the journal of facts which brought into question the legislative findings. These facts reveal the failure to comply with the pertinent constitutional provisions. When an entry in the journal or other legislative records creates an ambiguity or conflict with the findings of the Legislature, the courts may take judicial notice of such entry and consider the validity of the legislative findings. State ex rel. Heck's Discount Centers, Inc., et al. v. Winters, W.Va., 132 S.E.2d 374.
Certain language in State ex rel. Armbrecht, et al. v. Thornburg, et al., 137 *686 W.Va. 60, 70 S.E.2d 73, indicates that since each county in the state has been allocated at least one delegate for the past fifty years, the court may not question the constitutionality of the apportionment act. The defendants contend that such language supports their position here. We find no merit in the defendants' contention, inasmuch as the language referred to constitutes dictum with which we disagree and which we now disapprove.
Custom and usage are resorted to only as an aid in construing an ambiguous statute or constitutional provision. When the language thereof is clear and without ambiguity the courts will apply, not construe, such language. State ex rel. Dewey Portland Cement Company v. O'Brien, 142 W.Va. 451, 96 S.E.2d 171; State ex rel. Department of Unemployment Compensation v. Continental Casualty Company, 130 W.Va. 147, 42 S.E.2d 820; State ex rel. McLaughlin v. Morris, 128 W.Va. 456, 37 S.E.2d 85; 17 M.J., Statutes, Sections 34 and 44. The language of Article VI, Sections 6 and 7, is clear and unambiguous and will be applied by this Court, not construed.
Having held herein that Section 1 of the Act is constitutional and Section 2 is unconstitutional, we must now determine whether such provisions are severable. It is noted that no severability clause is contained in the Act. In order to make this determination we must look to the intent of the Legislature in enacting this statute.
This Act was passed by the Legislature pursuant to the obligation imposed upon it by Article VI, Sections 4 and 7, namely, to reapportion the Senate and House after each official census. With the relatively minor alteration of the senatorial districts, it appears clear that the principal inducement for the passage of this Act was the reapportionment of the membership of the House of Delegates. Where that part of a statute which contains the principal inducement for the passage thereof is declared invalid, the whole act must fall.
Reflecting this premise, the following language is found in 11 Am.Jur., Constitutional Law, Section 157: "One of the tests used to determine whether a statute is or is not severable is whether the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part held to be unconstitutional. If the valid and the invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid. This test is merely a means of ascertaining and carrying out the presumed intention of the legislature. If it appears that the invalid portion was designed as an inducement to pass the valid, the inference is that the legislature would not have passed the valid portion alone. * * *."
Similarly, it is said in 82 C.J.S., Statutes, § 93: "* * * the whole statute will be declared invalid where the valid and the invalid provisions are so connected and interdependent in subject matter, meaning, or purpose as to preclude the belief or presumption or conclusion that the legislature would have passed the one without the other, but, on the contrary, justify the belief or conclusion that the legislature intended them as a whole and would not have enacted a part only."
From the entire record of this case it appears clear that it was the legislative intent to reapportion the Legislature and that the principal inducement was the reapportionment of the House of Delegates. The two sections are so connected and interdependent in subject matter as to preclude the presumption that the Legislature would have passed one without the other. To create a House of Delegates and provide no manner of apportionment thereof *687 would create a state of chaos. The intention was to establish a whole Legislature, not a portion thereof. It is unthinkable that a legislative body would intend to enact a measure which would make it half valid and half invalid.
The portion of the statute containing the principal inducement for its enactment being declared invalid, we hold that the Act is not severable and that it is unconstitutional in its entirety.
For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is affirmed, insofar as it declared constitutional Section 1 of the Act and insofar as it declared unconstitutional Section 2 of the Act, but it is reversed in that it did not declare the Act unconstitutional in its entirety.
Affirmed in part; reversed in part.