No. 81–293.   VAN EMMERIK *v.* JANKLOW, GOVERNOR OF SOUTH DAKOTA, ET AL.   Appeal from Sup. Ct. S. D. dismissed for want of substantial federal question.

JUSTICE WHITE, with whom JUSTICE BLACKMUN joins, dissenting.

Appellant instituted this action to challenge the constitutionality of Senate Bill 40, 1981 S. D. Laws, ch. 102, pp. 243–245, an Act of the South Dakota Legislature which, *inter alia,* retroactively increased the sales tax on utility services. Beginning in 1967, South Dakota imposed a 3-percent tax on utility services.   S. D. Comp. Laws Ann. § 10–45–6 (1967). Retail occupational sales and use taxes were increased to 4 percent in 1969, 1969 S. D. Laws, ch. 267, § 1, pp. 366–367, and the State then began to collect sales taxes from utility companies at a rate of 4 percent.   Utilities from which the tax was collected sought refunds from the State, and the Supreme Court of South Dakota held that the sales tax on utility services was not changed by the 1969 legislation and that the utilities were entitled to a credit or refund.   *In re Sales Tax Refund Applications,* 298 N. W. 2d 799 (1980).   Meanwhile, appellant brought a class action against the State and the utility companies on behalf of all South Dakota residents who paid sales taxes in excess of the legal rate on their utility

bills. The Supreme Court ruled that the action against the State was barred by the doctrine of sovereign immunity, but that appellant was entitled to seek derivative relief from the utility companies. *Van Emmerik* v. *State*, 298 N.W. 2d 804 (1980). The legislature then enacted and the Governor approved Senate Bill 40, effective January 30, 1981, which imposed a 4-percent tax on utility services retroactive to 1969. Appellant immediately filed this suit challenging the constitutionality of the statute on due process and Contract Clause grounds and seeking an order to prevent its enforcement and to require the State to refund excess taxes. Relying principally on *United States* v. *Heinszen & Co.*, 206 U. S. 370 (1907), and *Forbes Pioneer Boat Line* v. *Board of Comm'rs*, 258 U. S. 338 (1922), the Supreme Court held, among other things, that the statute does not violate due process because it is a "curative act." 304 N.W. 2d 700, 703 (1981).

The difficulty in discerning the difference between permissible curative legislation and unconstitutionally retroactive legislation is apparent from an examination of our cases. A leading example of curative legislation is found in *United States* v. *Heinszen, supra*. There a tariff was imposed on goods coming into the Philippines beginning in 1898 when the islands came under the military control of the United States. The treaty ending the Spanish-American War was ratified in 1899, and the Government continued to collect the same tariff. Congress approved and continued the tariff in 1902. After this Court held that there was no authority to collect the tariff from 1899 to 1902, *Lincoln* v. *United States*, 202 U. S. 484 (1906), Congress enacted legislation legalizing and ratifying the collection of duties from 1899 to 1902. We held the legislation valid, reasoning that the legislature may "'cure irregularities, and confirm proceedings which without the confirmation would be void, because unauthorized, provided such confirmation does not interfere with intervening rights.'" *United States* v. *Heinszen, supra*, at 384, quoting *Mattingly* v. *District of Columbia*, 97 U. S. 687, 690 (1878).

Government officials also collected certain charges while believing they were authorized to do so in *Forbes Pioneer Boat Line* v. *Board of Comm'rs, supra.* There the Board of Commissioners believed they were authorized by statute to collect tolls from boats using a Florida canal. The Florida Supreme Court later held that the Board was without authority to collect the tolls, and the Florida Legislature passed a statute purporting to validate the collection of the tolls retroactively. We held the statute unconstitutional, rejecting the analogy to *United States* v. *Heinszen, supra,* and finding that the legislature's failure to impose tolls at an earlier date barred the legislature from depriving the plaintiff of his right to a refund.

*Heinszen* and *Forbes* appear to stand for the proposition that administrative, procedural, and technical defects unrelated to the underlying policy may be remedied by curative legislation, while legislative policy may not be changed retroactively. However, *Heinszen* and *Forbes* offer little guidance as to whether a retroactive tax increase constitutes a change in legislative policy. For example, the Court of Appeals of Maryland reached the opposite result from that reached by the lower court in this case when confronted with a similar retroactive tax increase. In *Washington National Arena Limited Partnership* v. *Treasurer,* 287 Md. 38, 54, 410 A. 2d 1060, 1069, cert. denied, 449 U. S. 834 (1980), the court held that a retroactive increase in recordation taxes was "wholly inconsistent with the policy set forth in the controlling State statute," and the petitioners, like the claimants in *Forbes,* were entitled to refunds as a matter of federal constitutional right.

Just as it is clear that "the principle of curative legislation could, if carried too far, encourage irresponsible official conduct,"* it is also clear that it is this Court's duty to define

---

*Slawson, Constitutional and Legislative Considerations in Retroactive Lawmaking, 48 Calif. L. Rev. 216, 239 (1960).

the boundary between permissible and impermissible retroactive tax increases. The question is hardly insubstantial, the lower courts are in conflict, and the Court's prior cases fail to furnish adequate guidance. I would note probable jurisdiction and set the case for plenary consideration.