475 S.E.2d 20

John T. GRIBBEN, et al., Petitioners Below, Appellees,

v.

Col. Thomas KIRK, Superintendent of the Division of Public Safety; Glen B. Gainer, Jr., Auditor of the State of West Virginia; and Larrie Bailey, Treasurer of the State of West Virginia, Respondents Below,

Col. Thomas Kirk, Superintendent of the Division of Public Safety, Respondent Below, Appellant.

STATE of West Virginia ex rel. Thomas KIRK, Superintendent of the Division of Public Safety, Petitioner,

v.

Glen B. GAINER, Jr., Auditor of the State of West Virginia; Larrie Bailey, Treasurer of the State of West Virginia; and John T. Gribben, et al., Respondents.

Nos. 23292, 23293.

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1996.

Decided May 21, 1996.

Darrell V. McGraw, Jr., Attorney General, Donald L. Darling, Senior Deputy Attorney General, Charleston, for Col. Thomas Kirk.

Michael C. Allen, Barbara H. Allen, James A. McKowen, Allen & Allen, L.C., Charleston, for John T. Gribben, et al.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Kelli D. Talbott, Senior Assistant Attorney General, Charleston, for Glen B. Gainer, Jr. and Larrie Bailey.

Dana F. Eddy, General Counsel, Office of the Governor, Charleston, for Governor Gaston Caperton.

Michael Mowery, General Counsel, Alison Patient, Chief Counsel to House Finance Committee, West Virginia House of Delegates, for Robert "Chuck" Chambers Speaker of West Virginia House of Delegates.

Michael Crane, Counsel to the President, Jennifer Walker, Counsel to Senate Judiciary Committee, West Virginia Senate, for Earl Ray Tomblin, President of the West Virginia Senate, Amici Curiae.

PER CURIAM:

This Court has consolidated two actions before it because both concern the payment of a judgment to certain state police officers for unpaid overtime which this Court addressed in *Gribben v. Kirk*, 195 W.Va. 488, 466 S.E.2d 147 (1995) (in order to avoid confusion we will refer to the prior case as *Gribben I* and to the two actions now before us as *Gribben II* ).  In the first action now before us, Colonel Thomas Kirk, the Superintendent of the Division of Public Safety, appeals the January 24, 1996 order of the Circuit Court of Kanawha County which ordered, *inter alia*, Col. Kirk, Glen B. Gainer, Jr., the Auditor of the State of West Virgi-

nia, and Larrie Bailey, the Treasurer of the State of West Virginia, to pay the judgment in the *Gribben I* case on or before January 31, 1996. In the second action Col. Kirk seeks a writ of mandamus in order to compel the State Auditor and State Treasurer to not pay the $1,508,847.13 judgment in *Gribben I* out of the account of the Division of Public Safety.[1] For reasons explained below, we issue a writ of mandamus, and we reverse the January 24, 1996 order and remand the case to the circuit court.

## I

As we explained in *Gribben I*, the *Gribben* case represents the third group of present and former state police officers who filed actions in order to collect unpaid back wages for overtime. The other two groups were *Adams, et al. v. Mooney*, Civil Action No. Misc.–77–342 and *Cordle, et al. v. Kirk*, Civil Action No. 83 P. Misc. 622. We found that the *Cordle* case bore an important relationship to *Gribben I*.

In *Cordle* the circuit court, by an order dated December 31, 1988, "found the exemption in W. Va. Code, 15–2–5, of State Police Troopers from the overtime pay provision of the West Virginia Wage and Hour Law, W. Va. Code, 21–5C–1, *et seq.*, 'is unconstitutional in that it denies equal protection under the laws as required by the Fourteenth Amendment to the United States Constitution and it violates the prohibition against passage of special legislation found in Article 6, Section 39 of the West Virginia Constitution.'" *Gribben I* at 491, 466 S.E.2d at 150 (footnote omitted). Therefore, the circuit court awarded the *Cordle* petitioners back wages for the time frame from October 13, 1983 to June 30, 1985. None of the parties appealed the circuit court's decision in *Cordle*.

Thereafter, the *Gribben* group filed a petition for a writ of mandamus in the circuit

court claiming that they were covered by the *Cordle* decision because they had been "coerced and mislead into 'opting out' of the *Cordle* litigation." *Gribben I*, 195 W.Va. at 492, 466 S.E.2d at 151. The circuit court agreed with the *Gribben* group and stated that they were entitled to the same relief as the *Cordle* class. Thus, the circuit court entered a December 29, 1994 order and a March 17, 1995 order which issued writs of mandamus against the Auditor and Treasurer directing the Auditor to pay the back pay claims together with interest accrued from December 31, 1988, by warrants drawn upon the State Treasury. The orders also directed the Treasurer to endorse the checks drawn upon the warrants. We affirmed the circuit court's orders in *Gribben I*.

Subsequently, the circuit court entered an order on January 24, 1996, requiring the Auditor to pay the $1,508,847.13 back overtime pay judgment in *Gribben I* by January 31, 1996.

Col. Kirk filed the two actions now before us and a motion for a stay of the January 24, 1996 order[2] after the Auditor informed the circuit court at the January 23, 1996 hearing that the only way he could comply with the provisions of the order would be to take the funds from the personal services and unclassified appropriations in the 1995–1996 budget of the Division of Public Safety. Col. Kirk maintains that if the judgment had been paid from the 1995–1996 budget of the Division of Public Safety, then the state police would have run out of money by April of 1996 requiring the state police to suspend operations for the balance of the fiscal year.

Col. Kirk points out that in the past the courts have not ordered the Auditor to pay any portion of the state trooper's back overtime pay awards directly from the current fiscal year budget of the Division of Public Safety. Instead, all prior payments have come from appropriations provided by the legislature for that purpose. The January 24, 1996 order requires the payment to be

---

**1.** The circuit court noted in its January 24, 1996 order that pursuant to its July 24, 1995 order $786,230.09 of the principal of the *Gribben I* judgment has been paid. Thus, $577,795.31 in principal and $931,051.82 in interest remain to be paid (which is a total of $1,508,847.13).

**2.** The circuit court granted a stay until February 15, 1996.

made even though no appropriation was yet available for such purpose.

Below is a chart compiled from figures supplied by Col. Kirk which explains what the legislature has paid to date in all of the police back overtime wage cases and what amount the legislature may still be obligated to pay:

**AMOUNT STILL OWED IN EACH CASE (as of 1/96 according to Col. Kirk)**

P = principal
I = interest
PI = principal plus interest

| CASE | AWARD | AMOUNT PAID | AMOUNT OWED | |
|---|---|---|---|---|
| Gribben | 1,364,025.42 | 786,230.09 | P: | 577,795.31 |
| | | | I: | 931,051.82 |
| | | | PI: | 1,508,847.13 |
| Cordle | 3,501,500.35 | 2,713,768.89 | P: | 851,605.03 |
| | | | I: | 2,296,885.10 |
| | | | PI: | 3,148,490.13 |
| Adams | 484,254.86 | 484,254.86 | P: | PAID |
| | | | I: | 312,994.50 |
| | | | PI: | 312,994.50 |
| **TOTALS** | 5,349,780.63 | 3,984,253.84--prior to 1996–1997 fiscal year budget | P: | 1,429,400.34 |
| | | | I: | 3,540,931.42 |
| | | | PI: | 4,970,331.76 |

Thus, as of January 1996 the State stills owes approximately $4,970,331.76 on the police back pay awards.

The legislature, being aware of the amount still owed on the police back pay awards, passed H.B. 4844 on March 9, 1996, to be effective from the date of passage, to address the obligation. *See* Enr. H.B. 4844, Reg. Session, 72nd Legislature (1996). The legislature stated in H.B. 4844 that the judgments in *Gribben I, Cordle,* and *Adams* were "moral obligations of the state". *Id.* Furthermore, the legislature appropriated $2,000,000.00 in the 1996–97 budget to go towards paying the police back pay judgments, and stated that "an appropriate schedule for payment of the moral obligation declared herein would be an appropriation of two million dollars per fiscal year until the moral obligation has been satisfied." *Id.* Additionally, the legislature stated the following regarding the interest in H.B. 4844:

> The Legislature finds that the above amounts do not include payments for interest accrued after the twentieth day of January, one thousand nine hundred ninety-six. The Legislature finds that it is under no obligation to pay amounts for interest which may have heretofore or may hereafter accrue. The Legislature declares that it may toll the running on interest or choose to pay no interest on the judgment in its discretion.

**II**

The three issues raised by Col. Kirk are: (1) Whether this Court should issue a writ of mandamus directing the Auditor to not pay the award mandated to be paid in the January 24, 1996 order of the circuit court from the 1995–1996 budget (specifically from the personal services and unclassified appropriation accounts) of the Division of Public Safety; (2) Whether the January 24, 1996 order violates the separation of powers provision of *W. Va. Const.* Art. V, § 1; and (3) Whether the January 24, 1996 order violates the provisions of *W. Va. Const.* Art. X, § 3 requiring that state funds only be expended for the purpose for which a valid appropriation has been made. Col. Kirk does not like the

manner in which the January 24, 1996 order mandates that payment be made on the *Gribben I* judgment. More specifically, the Auditor and Treasurer have made clear that absent a specific appropriation for the *Gribben I* judgment by the legislature, the only place they may take the money is from the account of the Division of Public Safety.[3] As we previously stated, Col. Kirk maintains that if the judgment was paid from the 1995–1996 budget of the Division of Public Safety, then the state police would have run out of money by April of 1996, requiring the state police to suspend operations for the balance of the fiscal year.

Col. Kirk maintains that because the legislature only appropriated funds to the Division of Public Safety for expenses incurred during the 1995–1996 year, it did not include an appropriation for the *Gribben I* judgment. Thus, Col. Kirk argues that paying the *Gribben I* judgment out of the 1995–1996 fiscal year budget of the Division of Public Safety violates *W. Va. Const.* Art. X, § 3, which requires that state funds be expended only for the purpose for which a valid appropriation has been made. Col. Kirk further asserts that the circuit court's mandate that the Auditor and Treasurer pay the *Gribben I* judgment by January 31, 1996, violates the separation of powers provision found in *W. Va. Const.* Art. V, § 1 in that the circuit court is telling the legislature how to appropriate money. Because Col. Kirk raises some valid concerns, we now clarify our holding in *Gribben I.*

In *Gribben I* this Court acknowledged that the history of this case is convoluted and unusual. However, we concluded in *Gribben I* that the obligation before us is a valid one which arises by valid enactments of the legislature. More specifically, we found that we were bound by the *Cordle* decision which held that certain police officers were entitled to overtime pay pursuant to *W. Va. Code,* 21–5C–1, *et seq.,* the West Virginia Wage and Hour Law. Moreover, we found that the *Gribben* group was entitled to the payment of interest pursuant to *W. Va. Code,* 56–6–31 [1981].[4] Thus, pursuant to *Gribben I,* the executive department and legislature have a duty to discharge the *Gribben I* obligation.

We recognize, however, that the power to appropriate money from the treasury of this State is vested in the legislature subject to specific requirements for executive action by the Governor pursuant to *W. Va. Const.* Art. VI, § 51.[5] The Governor starts the process by submitting a proposed budget to the legislature for consideration; however, the legislature actually appropriates the funds. *Id.* See *Board of Education v. Board of Public Works,* 144 W.Va. 593, 109 S.E.2d 552

---

**3.** The Auditor and Treasurer rely on *W. Va. Const.* Art. X, § 3, which states, in relevant part: "No money shall be drawn from the treasury but in pursuance of an appropriation made by law, and on a warrant issued thereon by the auditor; nor shall any money or fund be taken for any other purpose than that for which it has been or may be appropriated, or provided." The auditor and treasurer also rely on *W. Va. Code,* 12–3–5 [1923] which states:

When appropriation has been made by law, subject to the order or payable on the requisition of a particular officer, board, or person, the order or requisition in writing of such officer, board, or person shall be sufficient authority to the auditor to issue his warrant for the same or any part thereof. Provided, that the appropriation has not expired and the amount thereof shall not be exceeded.

**4.** *W. Va. Code,* 56–6–31 [1981] states:

Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

**5.** *W. Va. Const.* Art. VI, § 51 is known as the "Modern Budget Amendment," and begins by stating that "[t]he legislature shall not appropriate any money out of the treasury except in accordance with provisions of this section." *W. Va. Const.* Art. VI, § 51 details exactly how the legislature shall appropriate money.

(1959). Once the legislature appropriates the funds and the process of executive consideration is completed by the Governor, the Auditor issues a warrant authorizing the expenditure of the appropriation. *See W. Va. Const.* Art. X, § 3.[6] Thus, the executive department and legislature possess flexibility in fashioning a plan to pay the *Gribben I* judgment, and this Court will defer to those branches in that most difficult undertaking. For this reason, we find the circuit court misconstrued our holding in *Gribben I* when it ordered the immediate payment of the *Gribben I* judgment without giving the executive department and legislature an opportunity to address the manner in which this legal obligation shall be discharged.

Since these actions now before us were filed by Col. Kirk, the legislature passed H.B. 4844 addressing the *Gribben I* judgment. Our review of H.B. 4844 indicates that in two respects the legislature has not addressed the payment of this obligation in a manner which fully reflects the duties of the executive department and legislature imposed by §§ 4 and 5 of Art. X, and § 51 of Art. VI of the *West Virginia Constitution.*

■ As previously noted, in H.B. 4844 the legislature found that the police back overtime pay judgments in *Gribben I, Cordle* and *Adams* were "moral obligations of the state." We disagree with the legislature's characterization of its obligation. Based on *Cordle,* which we determined we were bound by, the underlying claims in *Gribben I* are valid legal obligations of the State pursuant to *W. Va. Code,* 21–5C–1, *et seq.,* the West Virginia Wage and Hour Law, which cannot now be avoided or ignored. *See* 16A Am.Jur.2d *Constitutional Law* § 670 (1979) (Vested rights may be created by statute and cannot be taken away without due process). *Cf. Durish v. Texas State Board of Insurance,* 817 S.W.2d 764 (Tex.Ct.App.1991) (Debts owed by insurer to a state were vested and could not be impaired by a law which was subsequently passed which in effect would apply retroactively to divest the state of collecting on the debt). Thus, the *Gribben I* judgment is more than a "moral obligation." It is "a previous liability of the State" under *W. Va. Const.* Art. X, § 4,[7] which must be discharged in a manner consistent with our Constitution. *See W. Va. Const.* Art. VI, § 51(3) ("Each budget shall embrace an itemized estimate of the appropriations ... for payment and discharge of the principal and interest of any debt of the State created in conformity with the Constitution, and all laws enacted in pursuance thereof[.]").

The executive department and legislature have several options available to them in order to discharge a "previous liability of the State." For instance, a "previous liability of the State" may be treated as a debt payable over a period of years. *See W. Va. Const.* Art. X, § 4, in relevant part ("[T]he payment of any [previous] liability other than that for the ordinary expenses of the State, shall be equally distributed over a period of at least twenty years."). Another alternative would be to appropriate general revenue to pay the judgment. *W. Va. Const.* Art. X, § 5, in relevant part ("The power of taxation of the legislature shall extend to provisions for the payment of the state debt, and interest thereon[.]").[8] Finally, the executive de-

---

**6.** *W. Va. Const.* Art. X, § 3 states:

No money shall be drawn from the treasury but in pursuance of an appropriation made by law, and on a warrant issued thereon by the auditor; nor shall any money or fund be taken for any other purpose than for which it has been or may be appropriated, or provided. A complete and detailed statement of the receipts and expenditures of the public moneys, shall be published annually.

**7.** *W. Va. Const.* Art. X, § 4 states, in full:

No debt shall be contracted by this State, except to meet casual deficits in the revenue, to redeem a previous liability of the State, to suppress insurrection, repel invasion or defend the State in time of war; but the payment of any liability other than that for the ordinary expenses of the State, shall be equally distributed over a period of at least twenty years.

**8.** *W. Va. Const.* Art. X, § 5 states in full:

The power of taxation of the legislature shall extend to provisions for the payment of the state debt, and interest thereon, the support of free schools, and the payment of the annual estimated expenses of the State; but whenever any deficiency in the revenue shall exist in any year, it shall, at the regular session thereof held next after the deficiency occurs, levy a tax for the ensuing year, sufficient with the other sources of income, to meet such deficiency, as well as the estimated expenses of such year.

partment and legislature may choose their own alternative as long as the alternative does not violate our state Constitution. *See Robertson v. Hatcher,* 148 W.Va. 239, 251, 135 S.E.2d 675, 683 (1964) (The legislature's power is restricted only by the State and Federal Constitutions). It is not for this Court to choose among the alternatives. However, the legislature's authority to determine how to discharge the *Gribben I* obligation does not extend to reclassifying the "previous liability" as a "moral obligation of the state."

■ Additionally, the legislature stated in H.B. 4844 that it is under no obligation to pay the interest on the *Gribben I* judgment. More specifically, the legislature declared that it could "toll the running on interest or choose to pay no interest on the judgment in its discretion." H.B. 4844. We disagree.

When the legislature enacted *W. Va.Code,* 56–6–31 [1981] it did not exempt the State from paying the interest which might be imposed upon it pursuant to that *Code* section. *See* n. 4, *supra,* for text of *W. Va.Code,* 56–6–31 [1981]. We recognize that the legislature had the authority to exclude the State from paying such interest if it had chosen to do so. *See Robertson,* 148 W.Va. at 251, 135 S.E.2d at 683 (Because the powers of the legislature are almost plenary, it can legislate on any subject as long as the state and federal constitutions are not violated). However, the legislature did not at the time it enacted and later amended *W. Va.Code,* 56–6–31 choose to exclude the State from paying such interest. Therefore, because judgment has been entered awarding such interest, the legislature cannot now arbitrarily pick and choose when the State will pay such interest without violating the due process clauses

found in *U.S. Const.* Amend. XIV and *W. Va. Const.* Art. III, § 10.[9]

■ We acknowledge that "[t]he Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration." *Landgraf v. USI Film Products,* 511 U.S. 244, 266, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229, 253 (1994). However, this unmatched power does not allow the legislature to retroactively change statutes so as to sweep away vested property rights. *See Van Emmerik v. Janklow,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 285 (1982) (White, J., dissenting); *Forbes Pioneer Boat Line v. Board of Commissioners,* 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922) (The due process clause is violated when a state passes a statute which applies retroactively to make lawful the imposition of tolls which a court had found should be reimbursed to a steamboat company because the tolls, when paid by the steamboat company, had been unlawfully imposed);[10] *Waters Landing Limited Partnership v. Montgomery County,* 337 Md. 15, 650 A.2d 712, 718 (Ct.App.1994) ("An ordinance interferes with vested rights when it attempts 'retroactively to change legislative policy.'" (citation omitted)). *See generally* 16A Am.Jur.2d *Constitutional Law* §§ 667–681 (1979). *Cf. Hughes v. Washington,* 389 U.S. 290, 296–97, 88 S.Ct. 438, 442, 19 L.Ed.2d 530, 535–36 (1967) (Stewart, J., concurring) ("[A] State cannot be permitted to defeat the constitutional prohibition against taking property without due process of law by the simple device of asserting retroactively that the property it has taken never existed at all.").

In the case before us, this Court upheld the circuit court's determination that the *Gribben* group was entitled to interest pursuant to *W. Va.Code,* 56–6–31 [1981]. The

---

**9.** *U.S. Const.* Amend. XIV states, in relevant part: "No State shall ... deprive any person of life, liberty, or property, without due process of law[.]"

*W. Va. Const.* Art. III, § 10 states: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

**10.** The Supreme Court of the United States has found that a legislature may pass retroactive legislation which remedies administrative, proce-

dural and technical defects unrelated to the underlying legislative policy. *See Van Emmerik, supra. Cf. Forbes, supra* and *United States v. Heinszen,* 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098 (1907) (In *Forbes* the court found the retroactive imposition of a toll to violate the due process rights of a steamboat company, whereas, in *Heinszen* the court found that the retroactive imposition of a tariff cured existing valid legislation and, therefore, did not violate due process rights).

*Gribben* group's right to the interest became more than a mere expectation when the circuit court ordered that they were entitled to the interest. The legislature cannot now change its legislative policy in order to rid itself of its previous liability. We emphasize that we are not substituting our judgment for the legislature's. Instead, we are merely enforcing what the legislature has by statute already mandated that a person or persons are entitled to collect pursuant to *W. Va. Code,* 56–6–31 [1981]. Accordingly, the legislative mandate that it is in its discretion as to whether it will pay the interest on the *Gribben I* judgment violates the due process clauses of the *U.S. Const.* and the *W. Va. Const.* because the interest is a valid obligation of the State pursuant to *W. Va. Code,* 56–6–31 [1981].

### III

In conclusion, so that there is no further confusion regarding our *Gribben I* opinion, we hereby hold that although the *Gribben I* judgment, including interest, is, as a preexisting liability, a valid obligation of this State, this Court accords deference to the legislature's power to determine how the judgment should be paid.

This Court has held the following in syllabus point 2 of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969): "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." In that Col. Kirk has a clear legal right to not have the *Gribben I* judgment paid out of the 1995–1996 budget of the Division of Public Safety and in that there is no other adequate remedy, we grant a writ of mandamus compelling the State Auditor and State Treasurer to not pay the *Gribben I* judgment out of the 1995–1996 account of the Division of Public Safety.

Furthermore, we reverse the January 24, 1996 order of the circuit court and remand the case to the circuit court for further proceedings consistent with this opinion. The circuit court should ensure that the State complies with both the mandates of this opinion, including the payment of interest, and its legislative enactment relating to the appropriation of two million dollars per fiscal year until the previous liability has been satisfied.

No. 23292—Reversed and Remanded.

• No. 23293—Writ granted.