EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Appellant,

v.

WESTINGHOUSE ELECTRIC
CORP., Appellee.

No. 84–3073.

United States Court of Appeals,
Third Circuit.

Argued Feb. 28, 1985.

Decided June 20, 1985.

Richard K. Willard, Acting Asst. Atty. Gen., Carolyn Kuhl, Deputy Asst. Atty. Gen., Douglas Letter, Atty., Dept. of Justice, Washington, D.C., David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Susan Buckingham Reilly, Acting Asst. Gen. Counsel, Mark S. Flynn (Argued), Atty., E.E.O.C., Washington, D.C., for appellant.

Walter P. DeForest (Argued), Philip A. Miscimarra, Reed Smith Shaw & McClay, Pittsburgh, Pa., Stuart I. Saltman, Westinghouse Elec. Corp., Pittsburgh, Pa., for appellee.

Before ADAMS, WEIS and WISDOM,[*] Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents the question whether Congress may ratify retroactively the institution of a lawsuit by the Equal Employment Opportunity Commission (EEOC) to enforce the Equal Pay Act requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206(d) (1982). Westinghouse Electric Corporation (Westinghouse), defendant in a sex discrimination suit initiated by the EEOC, moved to dismiss the action. It contended that the EEOC lacked enforcement authority because of the presence of an unconstitutional legislative veto provision in the statute that authorized the EEOC to institute Equal Pay Act suits, the Reorganization Act of 1977, 5 U.S.C. § 901 et seq. (1982).[1] The district court agreed that the EEOC was without power to bring the suit, and entered a judgment dismissing the complaint.

While EEOC's appeal from the judgment of dismissal was pending, Congress expressly ratified all reorganization plans taken pursuant to prior reorganization acts, including the Reorganization Act of 1977. See Pub.L. 98–532, 98 Stat. 2705 (1984). Contending that this intervening legislation retroactively affords it independent enforcement authority, the EEOC now moves this Court to vacate the district court's judgment and remand so that the EEOC may proceed with the Equal Pay Act suit. We agree that P.L. 98–532 applies retroactively, the judgment of the district court will be vacated and the matter remanded for further proceedings.

## I.

A complaint was filed by the EEOC on May 20, 1983, charging that Westinghouse had violated the Equal Pay Act by paying lower wages to female employees than to male employees performing equal work. EEOC's authority to institute the suit was founded upon Reorganization Plan No. 1 of 1978, 42 Fed.Reg. 19807, 92 Stat. 3781, which transferred executive administration and enforcement of the Equal Pay Act from the Department of Labor to the EEOC. The Reorganization Plan was promulgated by President Carter pursuant to authority granted by the Reorganization Act of 1977, 5 U.S.C. §§ 901 et seq. The Reorganization Act contains a legislative veto provision.

On August 29, 1983, Westinghouse moved for dismissal of the case, arguing that because of the legislative veto provision, the Reorganization Act was unconstitutional under *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); that the Reorganization Plan transferring Equal Pay Act enforcement to the EEOC was therefore void; and that consequently the EEOC was without authority to institute the present suit. The EEOC responded by contending that the legislative veto provision of the Reorganization Act was severable, and that therefore its unconstitutionality did not undermine the validity of the remainder of the Act. *See, e.g., EEOC v. Hernando Bank,* 724 F.2d 1188 (5th Cir. 1984); *Muller Optical Co. v. EEOC,* 743 F.2d 380 (6th Cir.1984).

The district court determined that the legislative veto provision was not severable, and that the EEOC thus had no power to maintain the action. It therefore dismissed the lawsuit. While the EEOC's appeal was pending, the Second Circuit, in *EEOC v. CBS, Inc.,* 743 F.2d 969 (2d Cir. 1984), also found the Reorganization Act unconstitutional under the reasoning in *Chadha.* Concerned about the far-reaching effects of its decision, the Second Circuit stayed its mandate pending possible

---

[*] Honorable John Minor Wisdom, United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. The Reorganization Act authorizes the President to transfer, consolidate, or abolish executive agency functions. The mechanism for accomplishing these changes is referred to as a reorganization plan. *See* 5 U.S.C. § 903 (1982).

Congressional action. Congress acted promptly, expressly ratifying all executive branch reorganization actions taken pursuant to prior reorganization legislation, including the Reorganization Act of 1977 that is in question here. See P.L. 98–532. The ratifying legislation declares as follows:

SECTION 1. The Congress hereby ratifies and affirms as law each reorganization plan that has, prior to the date of enactment of this Act, been implemented pursuant to the provisions of chapter 9 of Title 5, United States Code, or any predecessor Federal reorganization statute.

SECTION 2. Any action taken prior to the date of enactment of this Act pursuant to a reorganization plan that is ratified and affirmed by section 1 shall be considered to have been taken pursuant to a reorganization expressly approved by Act of Congress.

Pub.L. 98–532, 98 Stat. 2705 (1984). As the House Report explains, the "purpose of [this legislation] is to make clear the legal authority for agencies to exercise functions transferred under previously implemented reorganization plans...." H.Rep. No. 1104, 98th Cong., 2nd Sess. 2 (1984), U.S. Code Cong. & Admin.News 1984, pp. 4423, 4424.

After P.L. 98–532 was passed by the Congress and signed by the President, the EEOC moved in this Court to vacate the judgment of dismissal that had been entered by the district court and to remand for further proceedings on the Equal Pay Act charges. If P.L. 98–532 applies to the reorganization plan that transferred Equal Pay Act enforcement authority from the Department of Labor to the EEOC, it is argued, we need not resolve the issues originally presented in this appeal—i.e., whether the Reorganization Act of 1977 is constitutional. Westinghouse agrees that P.L. 98–532 may be dispositive of the right of the EEOC to enforce the Equal Pay Act, but contends that it should not be given retroactive effect to validate the power of the EEOC at the time this suit was originally filed.

## II.

■ By its terms, P.L. 98–532 is retroactive. Section 1 of the Act ratifies all reorganization plans pursuant to reorganization acts implemented "prior to the date of enactment of this Act," and Section 2 extends this ratification to actions taken pursuant to the above-ratified reorganization plans. Thus, it is clear that Congress intended P.L. 98–532 to be effective retroactively. It is clearly within Congress' power to enact retroactive legislation ratifying actions that when undertaken may have been unauthorized. *E.g., Swayne & Hoyt, Ltd. v. United States*, 300 U.S. 297, 301–02, 57 S.Ct. 478, 479–80, 81 L.Ed. 659 (1937); *Norton v. Shelby County*, 118 U.S. 425, 451, 6 S.Ct. 1121, 1130, 30 L.Ed. 178 (1886).

■ There is also no question that P.L. 98–532 applies to such EEOC enforcement actions as the one present here. The statute's express terms cover the institution of this litigation by the EEOC, for the lawsuit is an act taken pursuant to a reorganization plan. Indeed, Congress passed P.L. 98–532 precisely to respond to a similar question of EEOC authority. *See EEOC v. CBS*, 748 F.2d 124 (2d Cir.1984); *EEOC v. CBS*, 743 F.2d 969 (2d Cir.1984). Several courts have summarily held that P.L. 98–532 constitutes a full and effective retroactive ratification sufficient to remove any question regarding the EEOC's enforcement authority. *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 399–400 (9th Cir. 1985); *EEOC v. CBS*, 748 F.2d at 125; *Barrett v. Suffolk Transportation Services*, 600 F.Supp. 81, 82 (E.D.N.Y. 1984). Before joining the position taken by these courts, we shall first consider Westinghouse's arguments that giving P.L. 98–532 retroactive effect in this case would either work "manifest injustice" or alternatively, violate due process by retroactively endowing the district court with jurisdiction.

The "manifest injustice" standard derives from *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006,

2016, 40 L.Ed.2d 476 (1974), in which the Supreme Court held that while the general rule is that "a court is to apply the law in effect at the time it renders its decision," an exception might be made if manifest injustice is thereby demonstrated. *Bradley*, 416 U.S. at 711, 94 S.Ct. 2016.

We note that the "change in law" considered and held retroactive in *Bradley* was far more substantial than the executive "housekeeping" provision at issue here. *Bradley* involved a statute that retroactively created substantive liabilities; the question there was whether an attorney's fee statute should be applied to services rendered before the provision was enacted. In the case at hand, on the contrary, no substantive liabilities whatsoever were created, and no reasonable or settled expectations were frustrated. P.L. 98–532 merely ratified a transfer of executive authority to enforce the Equal Pay Act from the Labor Department to the EEOC. The transfer in question had been fully effected in 1978, and was not even called into question until 1984, when a split in the Circuits arose over the severability of the legislative veto provision. *See infra* note 2. It can hardly be claimed that Westinghouse had a reasonable substantive expectation based on a circuit split that did not arise until well after this lawsuit was commenced, and that was rapidly resolved by Congress.

Westinghouse's obligation under the Equal Pay Act to compensate male and female workers equally for equal work is unmodified by P.L. 98–532. Thus, the "change in law" at issue here may well be different in kind from the change at issue in *Bradley*. The Supreme Court in *Swayne & Hoyt, Ltd. v. United States* expressly recognized the significance of such a distinction when it rejected an argument that a retroactive transfer of executive authority in itself impairs substantial rights. 300 U.S. at 302, 57 S.Ct. at 480. The Court distinguished "between a bare attempt of the legislature retroactively to create liabilities for transactions ... fully consummated in the past ... and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice." *Id.*, quoting *Graham & Foster v. Goodcell*, 282 U.S. 409, 429, 51 S.Ct. 186, 193, 75 L.Ed. 415 (1931).

There has been no demonstration that Westinghouse would suffer any manifest injustice from retroactive application of P.L. 98–532. The *Bradley* Court articulated three factors relevant to the manifest injustice determination: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. Regarding the first factor, *Bradley* counsels that where a suit is not a "mere private case[ ] between individuals," but implicates the public interest, as here, retroactive application is favored. 416 U.S. at 719, 94 S.Ct. at 2020. Second, Westinghouse has no "material or unconditional" right to the result reached in a decision of a district court that has been properly appealed.[2] If such a right were sufficient to

---

2. We note peripherally that Congress' swift ratification of all reorganization plans in response to the split in the Circuits created by *EEOC v. CBS*, 743 F.2d 969 (2d Cir.1984), suggests that the legislative veto provision in the Reorganization Act was severable. *Compare EEOC v. CBS, supra,* with *EEOC v. Hernando Bank*, 724 F.2d 1188 (5th Cir.1984) (finding legislative veto provision severable); *Muller Optical Co. v. EEOC*, 743 F.2d 380 (6th Cir.1984) (same). The severability inquiry is two-pronged: (1) are the valid and invalid statutory provisions functionally independent; and (2) did the legislature intend the provisions to be severable? *See* Note, *Severability of Legislative Veto Provisions: A Policy Analysis*, 97 Harv.L.Rev. 1182 (1984). Congress' across-the-board ratification of all reorganizations pursuant to the Act strongly suggests that the answer to both questions is yes. In fact, the district court itself suggested that were Congress to do something affirmative regarding the reorganization, the merits might be resolved differently; it noted that "Congress [had] done nothing to directly enact legislation which would address the substantive issue of the EEOC's authority to institute litigation for enforcement of the Equal Pay Act." A–90. P.L. 98–532 is not only directly addressed to that question, but was expressly intended to resolve it by reaffirming EEOC authority.

defeat retroactivity, the exception would swallow the rule. Finally, the change in law here, such as it is, works no injustice on Westinghouse. Prior to the transfer of authority, the Department of Labor had enforcement authority for the Equal Pay Act. There would appear to be no injustice in the fact that Westinghouse must now answer to the EEOC instead of to the Labor Department for its alleged Equal Pay Act violations.

■ At oral argument, Westinghouse advanced for the first time a different objection to retroactivity. It characterized P.L. 98–532 as retroactively granting the district court jurisdiction, and contended that such action violated the due process clause. Essentially, it claimed that if the district court lacked jurisdiction over the suit initially, such defect could not be cured by subsequent Congressional action. We are not persuaded by this argument.

First, Congress did not create jurisdiction over this lawsuit in enacting P.L. 98–532. The district courts have had federal question jurisdiction over such claims since the Equal Pay Act was enacted in 1964. *See* 28 U.S.C. § 1331 (1982). The authority of one executive agency or another to institute such suits is properly characterized as a question of standing, and not one of jurisdiction. Second, no reason has been suggested why a retroactive transfer of standing to sue from one agency to another should be viewed under any different principles from those governing retroactive legislation generally. Certainly the retroactive change wrought here has less impact on substantive rights of individuals than decisions, for example, to tax attorneys' fees, *Bradley,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476, to require employers to compensate their employees, *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), or to assess withdrawal penalties in the pension fund context, *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* — U.S. —,

104 S.Ct. 2709, 2718–19, 81 L.Ed.2d 601 (1984), all of which have been given retroactive effect despite due process challenges.[3]

The two cases relied upon by Westinghouse, *Forbes Pioneer Boat Line v. Board of Commissioners,* 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922) and *Van Emmerik v. Janklow,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 285 (1982), cast no doubt on the result we reach today. *Forbes* involved an attempt by a state legislature to ratify retroactively a canal tax that the state had collected in error, and that plaintiff had sought to recover through litigation. Unlike the situation here, the retroactive statute in *Forbes* sought to readjust an index to create *substantive* obligations. *But cf. Pension Benefit Guaranty Corp.,* 104 S.Ct. at 2718–19 (retroactive legislation adjusting substantive economic burdens based on past acts meets test of due process only if justified by "a rational legislative purpose").

*Van Emmerik* affords Westinghouse even less support. In that case, the Court dismissed for want of a substantial federal question an appeal from a South Dakota Supreme Court decision upholding the retroactive imposition of a utility tax. Justice White, joined by Justice Blackmun, dissented, contending that a substantial federal question was raised as to whether the tax increase constituted permissible or unconstitutional retroactive legislation. 454 U.S. at 1132, 102 S.Ct. 986. The boundary line Justice White recognized, however, supports a finding of permissible retroactivity here: "administrative, procedural, and technical defects unrelated to the underlying policy may be remedied by curative legislation, while legislative policy may not be changed retroactively." *Id.* at 1133, 102 S.Ct. at 987. No legislative policy was altered by P.L. 98–532, the statute at issue here; it merely ratified a series of administrative reorganizations whose legality had been called into question after the fact by a

---

**3.** Similarly, in *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960), the Supreme Court gave retroactive effect to a statute authorizing a suit that was unauthorized when instituted without even raising the issue of due process.

division of authority in the court of appeals.

### III.

Because there is no manifest injustice and no violation of due process as a result of the application of P.L. 98–532 to the facts here, we hold that P.L. 98–532 authorizes the EEOC to bring this lawsuit. The judgment of the district court will therefore be vacated and the case remanded for proceedings on the Equal Pay Act claims.