**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, Defendant.**

No. 82 C 2922.

United States District Court, N.D. Illinois, E.D.

Sept. 17, 1987.

Kathleen Mulligan, Patricia L. Winfrey, Daniel Preciado, Chicago, Ill., for plaintiff.

Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield and Segall, Ltd., Chicago, Ill., Richard T. Sampson, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## ORDER

NORGLE, District Judge.

This matter is before the Court on defendant's, Merrill Lynch's, objections to Magistrate Weisberg's Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred the cross motions for summary judgment in this case to the Executive Committee for assignment to a magistrate. The Executive Committee gave its consent and this case was assigned to Magistrate Weisberg.

On October 2, 1986, Magistrate Weisberg filed his Report and Recommendation. The report recommended this Court grant plaintiff's, Equal Employment Opportunity Commission's ("EEOC's"), motion for summary judgment. Merrill Lynch has filed its objections to the Magistrate's Report and Recommendation.

After a *de novo* review of the cross motions for summary judgment, the Court finds the Magistrate's Report and Recommendation is supported by the record and the cited authorities.

Merrill Lynch, in its objections to the Magistrate's Report and Recommendation, argues: 1) the EEOC's authority to enforce the Equal Pay Act ("EPA") was not clearly established at the time of the request for records, and, therefore, enforcement of the request would unfairly impose retroactive liability; 2) the EEOC has an obligation to comply with the Title VII (Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*) notice requirements in conducting an investigation under the Equal Pay Act; and 3) the EEOC's recordkeeping and reporting regulations under the EPA are invalid because they should have been published for public comment and/or public hearing prior to adoption.

The EEOC had the authority in 1981 to request records from Merrill Lynch. The court agrees with the Magistrate that "[r]etroactive application of the Ratification Act in this case is in accord with the terms of that Act and does not create

any manifest injustice or violation of due process." Magistrate's Report and Recommendation, p. 9. The Magistrate's conclusion is a correct statement of the law regarding the EEOC's authority to enforce the Equal Pay Act by requesting records from Merrill Lynch. in 1981.

Second, EPA cases are not subject to Title VII requirements. *See, e.g., E.E.O.C. v. Hernando Bank, Inc.*, 724 F.2d 1188 (5th Cir.1984); *E.E.O.C. v. Home of Economy, Inc.*, 712 F.2d 356 (8th Cir.1983); *Ososky v. Wick*, 704 F.2d 1264 (D.C.Cir.1983). Therefore, the Magistrate was correct in finding that the EEOC was not required to give Merrill Lynch notice of the charge in accordance with Title VII.

Finally, this court finds no merit to Merrill Lynch's argument that the EEOC's recordkeeping and reporting regulations are invalid because they were not published for public comment and/or public hearing prior to adoption. The EEOC regulations were interpretive rules exempt from the requirements of publication under the Administrative Procedure Act. 5 U.S.C. § 553.

Accordingly, the Court adopts and incorporates Magistrate Weisberg's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) as Appendix A of this Order and orders as follows: (1) Plaintiff's motion for summary judgment is granted; (2) Defendant's cross motion for summary judgment is denied; (3) Merrill Lynch must submit the required reports to the EEOC.

### APPENDIX A

### MAGISTRATE'S REPORT AND RECOMMENDATION

BERNARD WEISBERG, United States Magistrate.

In 1978 authority to administer and enforce the Equal Pay Act[1] was transferred by President Carter from the Department of Labor to the Equal Employment Opportunity Commission ("EEOC" or "Commission"). The transfer, effective July 1, 1979, was accomplished by Reorganization Plan No. 1[2] pursuant to the Reorganization Act of 1977.[3] The 1977 Act authorized the President to prepare executive agency reorganization plans and required the President to transmit proposed reorganization plans to both Houses of Congress. The Act provided for a "one-house legislative veto". Under Section 906(a), a plan submitted by the President would become effective after 60 days of continuous session of Congress unless during that period either House passed a resolution disapproving the plan. Reorganization Plan No. 1 became effective after the House of Representatives rejected a resolution of disapproval, 124 Cong. Record 11336–11337 (1978), and the Senate voted not to consider a resolution on the subject. *Id.* at 12888.

Doubts about the constitutionality of the legislative veto device gave rise to numerous challenges to the validity of Reorganization Plan No. 1 and EEOC's authority to enforce the Equal Pay Act ("EPA") as well as the Age Discrimination In Employment Act ("ADEA"), enforcement of which was also transferred to the Commission by that Plan. Those challenges were reinforced in June, 1983 when the Supreme Court for the first time squarely addressed the constitutionality of a legislative veto in *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed. 2d 317. *Chadha* held that Congress' exercise of the legislative veto contained in § 244(c)(2) of the Immigration and Nationality Act[4] violated Article I, §§ 1 and 7 of the Constitution which require that laws be approved by both Houses of Congress and presented for approval to the President. Uncertainties after *Chadha* about the validity of reorganization plans implemented under the 1977 Act were resolved in October, 1984 when the President approved Pub.Law 98–532[5] (the "Ratification Act").

---

1. 29 U.S.C. § 206(d).

2. 42 Fed.Reg. 19807, 92 Stat. 3781, reprinted in 1978 U.S.Code Cong. & Ad.News 9795.

3. 5 U.S.C. § 901 et seq.

4. 8 U.S.C. § 1254(c)(2).

5. 5 U.S.C. § 906 (1986 Supp. Note).

That law expressly ratified all Executive branch reorganization plans implemented pursuant to prior reorganization statutes, including the Reorganization Act of 1977, as well as all actions taken pursuant to such reorganization plans.

Nevertheless, the validity of Reorganization Plan No. 1 and EEOC's authority to enforce the Equal Pay Act prior to approval of the Ratification Act continue to be vigorously disputed in this case which was brought by the EEOC on May 11, 1982 to enforce the reporting requirements of § 11(c) of the Fair Labor Standards Act ("FLSA")[6] and to aid in an investigation under the Equal Pay Act. The action was brought under § 17 of the Fair Labor Standards Act[7] after defendant Merrill Lynch, Pierce, Fenner and Smith ("Merrill Lynch"), refused to furnish a report requested on July 17, 1981 by EEOC's Acting District Director. The requested report related to employees who had worked at Merrill Lynch's Chicago facility at 141 W. Jackson Blvd., since March 1, 1977. The complaint asks the court to order Merrill Lynch to submit required reports to the Commission. Jurisdiction is based on 28 U.S.C. §§ 1337 and 1345.

EEOC and Merrill Lynch filed cross motions for summary judgment in 1982 and since then have filed over 500 pages of briefs, in addition to an extensive collection of exhibits, affidavits and letters to the court supplying additional authorities and argument. The first round of briefs was filed in 1982. Ruling was deferred until there was a decision in *Chadha,* then pending in the Supreme Court. During 1983 and 1984, briefs were filed which argued the effect of *Chadha* and subsequent lower court decisions. A third group of briefs, filed in 1985, dealt with the effect of the 1984 Ratification Act.

The cases have held that the Ratification Act mooted challenges to the validity of Reorganization Plan No. 1 and EEOC's authority to enforce the Equal Pay Act and the ADEA. *EEOC v. Westinghouse Elec. Corp.,* 765 F.2d 389 (3rd Cir.1985); *EEOC v. First Citizens Bank of Billings,* 758 F.2d 397 (9th Cir.1985); *Barrett v. Suffolk Transportation Services, Inc.,* 600 F.Supp. 81, 82 (E.D.N.Y.1984). The Third Circuit has also rejected the contention that the Ratification Act should not be applied retroactively to a pending sex discrimination suit brought under the Equal Pay Act. *Westinghouse Elec. Corp.*

Merrill Lynch distinguishes those cases, based on actual claims of discrimination, from this case which involves the obligation to keep records and make reports. Defendant's argument is that obligations not to discriminate in violation of the Equal Pay Act and ADEA were continuously in effect during the period when EEOC's enforcement authority was in doubt, while the obligation to keep records is by regulation limited to a three-year period which has expired for the report in question. The argument has four steps:

1. The legislative veto provision contained in the Reorganization Act of 1977 is unconstitutional under *Chadha.*

2. That legislative veto provision is not severable. Therefore (a) the entire 1977 Act is unconstitutional, (b) Reorganization Plan No. 1 was invalid prior to approval of the 1984 Ratification Act and (c) the EEOC had no authority to enforce the Equal Pay Act in 1981 when it requested the report in dispute or in 1982 when it brought this action.

3. Under applicable regulations Merrill Lynch was required to keep pertinent employment records for a three-year period. Its obligation to keep and summarize its records from 1977 to 1981 was extinguished by the passage of time because no lawful request for the disputed report was made prior to approval of the 1984 Ratification Act.

4. It would be manifestly unjust and a violation of constitutional due process requirements to apply the 1984 Ratification Act retroactively to re-

---

**6.** 29 U.S.C. § 211(c).

**7.** 29 U.S.C. § 217.

quire Merrill Lynch to report on records it was under no duty to keep or report on at the time the 1984 Act was approved.

The last of these contentions will be discussed first.

### 1. *Retroactivity*

Section 11(c) of the Fair Labor Standards Act, under which this action is brought, provides:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder. 29 U.S.C. § 211(c).

The implementing regulation on which Merrill Lynch relies provides:

> Each employer shall preserve for at least 3 years: (a) Payroll records. From the last date of entry, all those payroll or other records containing the employee information and data required under any of the applicable sections of this part, ... 29 C.F.R. § 516.5(a) (1985).

The 1984 Ratification Act in its entirety reads as follows:

> An Act to prevent disruption of the structure and functioning of the Government by ratifying all reorganization plans as a matter of law.
>
> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.*
>
> *Section 1.* The Congress hereby ratifies and affirms as law each reorganization plan that has, prior to the date of enactment of this Act, been implemented pursuant to the provisions of chapter 9 of title 5, United States

Code, or any predecessor Federal reorganization statute.

> *Section 2.* Any actions taken prior to the date of enactment of this Act pursuant to a reorganization plan that is ratified and affirmed by section 1 shall be considered to have been taken pursuant to a reorganization expressly approved by Act of Congress.

Pub.Law 98–532.

Merrill Lynch argues first that while the Ratification Act purports to ratify past actions taken by EEOC, that Act does not by its terms place any retroactive duty upon employers to perform acts that they were not required to perform prior to approval of Pub.Law 98–532. Relying on its contention that Reorganization Plan No. 1 was invalid, Merrill Lynch argues that the Commission's 1981 request and filing of this action in 1982 were "nullities" which placed no obligation on Merrill Lynch to retain any employment records beyond the continuously advancing three-year period specified in 29 C.F.R. § 516.5(a) (1985).

■ The difficulty with Merrill Lynch's argument is that it ignores the express terms and legal effect of the Ratification Act. Pub.Law 98–532 was clearly intended to operate retroactively, both in Section 1 which ratified Reorganization Plan No. 1 "as law", and Section 2, under which any actions previously taken pursuant to Reorganization Plan No. 1 "shall be considered to have been taken pursuant to a reorganization expressly approved by Act of Congress." "[R]atification, if made, [is] equivalent to an original authority ..." *Mattingly v. Dist. of Columbia*, 97 U.S. (7 Otto) 687, 690, 24 L.Ed. 1098 (1878). Ratification "operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally." *Norton v. Shelby County*, 118 U.S. 425, 451, 6 S.Ct. 1121, 1130, 30 L.Ed. 178 (1886). The Ratification Act thus requires that Reorganization Plan No. 1 be treated "as law" when it was originally issued and that the Commission's 1981 request to Merrill Lynch be treated as an action which EEOC was authorized by Congress to take at that time. Since the 1981 request was

authorized, Merrill Lynch had a corresponding duty to keep pertinent records and summarize them upon request without regard to whether the Commission had the necessary authority prior to the Ratification Act.

Merrill Lynch does not dispute Congressional power to ratify official action unauthorized when taken. *See Swayne & Hoyt, Ltd. v. U.S.*, 300 U.S. 297, 301–302, 57 S.Ct. 478, 479–480, 81 L.Ed. 659 (1937). Nor does Merrill Lynch dispute the general principle, reaffirmed in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), that a court is to apply the law in effect at the time it renders its decision "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. Merrill Lynch argues, however, that to apply the Ratification Act in this case would result in manifest injustice. *Bradley* discusses three factors to be considered in assessing such a claim—(a) the nature and identity of the parties, (b) the nature of their rights and (c) the nature of the impact of the change in law upon those rights. 416 U.S. at 717, 94 S.Ct. at 2019.

As to the first factor, *"Bradley* counsels that where a suit is not a 'mere private case [ ] between individuals,' but implicates the public interest ... retroactive application is favored." *Westinghouse Elec. Corp.*, 765 F.2d at 392, quoting *Bradley*. Merrill Lynch argues that like the plaintiffs in *Bradley*, which was a school desegregation case, it has opposed allegedly unconstitutional action by the government. That is true, but does not speak to the parties and interests at stake in this case, which was brought by the Commission against a private employer in aid of an investigation under the Equal Pay Act, one which clearly implicates the public interest.

The second factor to be considered under *Bradley* is whether the proposed retroactive application of law would infringe a right that "had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020. Merrill Lynch's right to discard employment records after three years did not mature or become unconditional prior to approval of Pub.Law 98–532. Merrill Lynch tacitly concedes that if the Commission had authority to request the report in dispute in 1981, then Merrill Lynch had a continuing duty to retain the pertinent records without regard to the three year period specified in the regulation. That concession is unavoidable for it could not be seriously contended that by resisting enforcement litigation for more than three years an employer could avoid its duty to report. Thus, the right to discard employment records depended on the ultimate success of Merrill Lynch's argument that Reorganization Plan No. 1 was invalid, hardly a matured or unconditional right.[8] Merrill Lynch also suggests, without supporting authority, that retroactive application of Pub.Law 98–532 would somehow infringe its "unconditional" right to contest government action it believes to be unconstitutional. But Merrill Lynch does not explain how its right to pursue its constitutional challenge will be infringed, "proscribed" or "nullified" by requiring it to furnish the report in dispute.

The third question under *Bradley* is whether applying the changed law would impose new and unanticipated obligations upon a party without notice or an opportunity to be heard. 416 U.S. at 720, 94 S.Ct. at 2020. Merrill Lynch does not argue that requiring the disputed report would come as a surprise or without prior notice. Its statutory duty to keep records and make reports has been continuously in effect since 1964 when the Equal Pay Act became effective. Merrill Lynch at no time had any fixed or unconditional interest in any of the legal authorities it has relied upon in

8. Authority continues to be divided on the issues rendered moot by the Ratification Act. As to whether *Chadha* applies to an unexercised legislative veto, *see Muller Optical Co. v. EEOC*, 743 F.2d 380, 384–385 (6th Cir.1984) and *Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550, 1556 (D.C.Cir.1985). As to whether, if invalid, the legislative veto provisions of the 1977 Reorganization Act are severable, compare *EEOC v. Hernando Bank*, 724 F.2d 1188 (5th Cir.1984) and *EEOC v. Ingersoll Johnson Steel Co.*, 583 F.Supp. 983, 987–989 (S.D.Ind.1984) with *EEOC v. CBS, Inc.*, 743 F.2d 969 (2d Cir.1984).

resisting EEOC's claim. Merrill Lynch's argument that applying the Ratification Act here would create "new substantive obligations" rests upon its contention, discussed and rejected above, that defendant had an unconditional right to discard records as they became three years old during the pendency of this litigation.

Merrill Lynch has not suggested that prior to the Ratification Act it relied to its detriment on the assumed invalidity of Reorganization Plan No. 1. Merrill Lynch does not say that it has in fact discarded any pertinent records. And this is not a case in which the EEOC is seeking records which were more than three years old at the time of its initial request. This court perceives no injustice in applying the Ratification Act in this case.

Nor does retroactive application of the Ratification Act here violate due process requirements. Merrill Lynch cites *Graham & Foster v. Goodcell*, 282 U.S. 409, 429, 51 S.Ct. 186, 194, 75 L.Ed. 415 (1931) in contending that the legislature cannot undertake "bare attempt[s] ... retroactively to create liabilities for transactions ... fully consummated in the past." *Graham & Foster* upheld statutory ratification of completed tax collections that were barred by the statute of limitations. Applying the Ratification Act in this case, however, would not create new substantive liabilities, but would require Merrill Lynch to furnish reports to aid in an investigation under the Equal Pay Act. As the Supreme Court said in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984), retroactive application of economic legislation is justified by a rational legislative purpose. Eliminating uncertainties about the legal authority of executive branch agencies whose powers and functions were modified by reorganization plans is clearly a rational legislative purpose.

EEOC's authority to enforce the Equal Pay Act is clear. Retroactive application of the Ratification Act in this case is in accord with the terms of that Act and does not create any manifest injustice or violation of due process. This conclusion makes it unnecessary to consider whether Reorganization Plan No. 1 was invalid absent its ratification by Congress in 1984.

## 2. *Was EEOC Required to Give Merrill Lynch Notice of a Charge in Accordance With Title VII?*

Merrill Lynch argues that EEOC's request for the report in dispute was invalid because it failed to include a notice of charge of sex discrimination under Title VII, a notice which Merrill Lynch contends was required by an EEOC regulation in effect when EEOC received the complaint which led to its investigation in this case.

A supplemental affidavit dated October 26, 1982 of Joanne Olson, records custodian for the Equal Pay Investigation unit of EEOC's Chicago District Office, states that EEOC attempted to commence an equal pay investigation in this case pursuant to a complaint brought to EEOC from an individual who requested a promise of confidentiality. Attached to that affidavit is a copy of a letter dated September 28, 1979 from the supervisor of the Equal Pay Unit of the Commission's Chicago Office addressed to the complainant in this case (with the complainant's identity deleted) acknowledging the receipt of information, assuring the complainant that information furnished to the Commission will be kept confidential, and stating that the conditions described by the plaintiff will be "look[ed] into" by the Commission's Equal Pay Unit.

By order dated June 27, 1979, effective July 1, 1979, EEOC adopted certain transitional procedures regarding administration of the Equal Pay Act. Those procedures included the following provisions:

(e) Whenever the Commission receives a charge or obtains information relating to possible violations of one of the statutes which it administers and the charge or information reveals possible violations of one or more of the other statutes which it administers, the Commission will deem such charges or information as being filed in accordance with all such relevant statutes and process them accordingly.

\*   \*   \*   \*   \*   \*

(g) The identity of persons giving information as to violations of the Act shall not be disclosed unless necessary in a court proceeding.

44 Fed.Reg. 38670–38671.

Final record keeping and administrative regulations under the Equal Pay Act were approved by the Commission effective January 19, 1981. 46 Fed.Reg. 4888–4889. The final regulations replaced Paragraph (e) of the 1979 procedures with the following provisions:

(b) Any person claiming to be aggrieved or the agent for such person may advise the Commission of the statute or statutes under which he or she wishes the Commission to commence its inquiry.

(c) Whenever the Commission is investigating a charge or allegation relating to a possible violation of one of the statutes which it administers and finds a violation of one or more of the other statutes which it administers, the Commission may seek to remedy such violation in accordance with the procedures of all relevant statutes. 29 C.F.R. § 1620.23 (1985).

An introductory comment accompanying the 1981 regulations stated:

Paragraphs (b) and (c) of § 1620.23 modify the language set forth in paragraph (e) of the notice previously published in the Federal Register at 44 Fed.Reg. 38670 (July 2, 1979) so that an aggrieved person desiring to make an allegation of an employment violation under one of the laws administered by the Commission may specify such law or, if no law is specified, will allow Commission staff to contact the aggrieved person and ascertain the appropriate law. By considering the allegation under all laws administered by the Commission as the July 2, 1979, notice stated, the identity of the aggrieved person could unnecessarily be disclosed. 46 Fed.Reg. p. 4888.

Merrill Lynch argues that because violations of the Equal Pay Act are also violations of Title VII [9],

(1) Paragraph (e) of the 1979 procedures required that all charges and information relating to alleged Equal Pay Act violations be deemed filed as sex discrimination charges under Title VII;

(2) since Paragraph (e) was in effect when EEOC received the complaint that led to this case, that triggered the requirement in § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), that whenever an unlawful employment practice charge is filed, notice of that charge, including the date, place and circumstances, must be served upon a respondent employer within 10 days;

(3) EEOC's failure to serve such a notice of charge in this case violated both Paragraph (e) of the 1979 procedures and § 706(b) of Title VII and;

(4) that violation bars EEOC from conducting an investigation under the Equal Pay Act and requesting the report in dispute.

The foregoing argument, set forth in briefs filed in 1982, was restated by Merrill Lynch in 1985 as follows: "If the EPA complaint received by EEOC in 1979 concerning Merrill Lynch met the requisites of a Title VII charge of discrimination under EEOC's regulations, EEOC was bound to issue a notice of charge under Title VII prior to investigating Merrill Lynch." Dkt. Item 59, p. 15. Merrill Lynch had sought discovery of documents relating to the complaint received by the Commission in 1979. Its motion to compel compliance with its discovery requests, which was continued generally on April 29, 1983 and has not been ruled on, is discussed in Part 5 of this Report. This Report will assume that the complaint received by the Commission in 1979 regarding alleged sex-based wage disparities satisfied the requirements of a Title VII charge.

Merrill Lynch's attempt to engraft Title VII notice of charge provisions onto the Equal Pay Act runs counter to the established principle that these are two distinct statutes creating independent rights and

---

**9.** Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), makes it unlawful to "discriminate against any individual with respect to his compensation ... because of such individual's ... sex ..."

that neither should be read in a way which undermines the other:

Nor do we doubt that the same set of facts may form the basis for redress under both Title VII and the Equal Pay Act if the requirements of each are separately satisfied and the claimant does not reap overlapping relief for the same wrong. Unless foreclosed by the statutory language or history, nothing to rob aggrieved parties of the freedom to select among multiple remedies for separate though concurrent statutory violations is apparent.

Title VII rights are independent of the rights created by other statutes, and where remedies coincide the claimant should be allowed to utilize whichever avenue of relief is desired. This would seem to be the clearer for claimants under Title VII which, as the Supreme Court held in *Alexander v. Gardner–Denver,* [415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)], was intended to "supplement, rather than supplant, existing laws ... relating to employment." The Court has also noted that the legislative history of Title VII "manifests a congressional intent to allow an individual to pursue independently his rights under Title VII and other applicable state and federal statutes." During the pre-enactment debates, Congress rejected a proposed amendment which would have made Title VII the exclusive remedy for the unlawful employment practices it covers, and thereby evinced a congressional purpose to leave open other modes of relief available to victims of discriminatory employment practices.

Although Title VII reaches farther than the Equal Pay Act to protect groups other than those sex-based classes and to proscribe discrimination in many facets of employment additional to compensation, nowhere have we encountered an indication that Title VII was intended either to supplant or be supplanted by the Equal Pay Act in the relatively small area in which the two are congruent. On the contrary, we are satisfied that the provisions of both acts should be read in *pari materia,* and neither should be interpreted in a manner that would undermine the other. *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 445–446 (D.C.Cir.1976). [footnotes omitted].

*See also Ende v. Board of Regents of Regency Universities,* 757 F.2d 176, 183 (7th Cir.1985).

Did Paragraph (e) of the Commission's 1979 procedures effect the major change in the relationship of Title VII and EPA urged by Merrill Lynch whereby, when the Commission receives a written EPA complaint which also satisfies the requirements of a Title VII charge, it is barred from conducting an EPA investigation unless it first serves a Title VII notice of charge?

Although Paragraph (e) is not a model of clarity, it is most unlikely that the interpretation of Paragraph (e) urged by Merrill Lynch was intended by the Commission. The 1979 procedures referred throughout to administration and enforcement of the Equal Pay Act. They contain no express reference to Title VII. Paragraph (g) of the 1979 procedures, which provided that the identity of persons who inform the Commission of EPA violations shall not be disclosed except in a court proceeding, is inconsistent with defendant's interpretation. Furthermore, under the Fair Labor Standards Act, which governs EPA enforcement proceedings, no notice of a complaint is required and confidentiality for complainants is protected by a long-standing regulation. 29 C.F.R. § 800.164 (1985). Thus, under Merrill Lynch's reading of Paragraph (e), the Commission's first action in undertaking its newly acquired authority to enforce the EPA was to significantly limit, if not renounce, its authority to conduct EPA investigations in accordance with the FLSA.

Since Merrill Lynch's position would effectively amend the Fair Labor Standards Act by imposing Title VII notice requirements on some or all EPA investigations, it would render Paragraph (e) itself invalid in view of § 907(a) of the 1977 Reorganization Act, 5 U.S.C. § 907(a), which provides:

(a) A statute enacted, and a regulation or other action made, prescribed, issued, granted, or performed in respect of or by

an agency or function affected by a reorganization under this chapter, before the effective date of the reorganization, has, except to the extent rescinded, modified, superseded, or made inapplicable by or under authority of law or by the abolition of a function, the same effect as if the reorganization had not been made. However, if the statute, regulation, or other action has vested the functions in the agency from which it is removed under the reorganization plan, the function, insofar as it is to be exercised after the plan becomes effective, shall be deemed as vested in the agency under which the function is placed by the plan.

Neither party has cited any law which gave the Commission authority to adopt a regulation which would amend the Fair Labor Standards Act.

Merrill Lynch contends that the Commission is bound by Paragraph (e) because that procedure affected a substantive right, i.e., Merrill Lynch's right to receive notice of charges filed under Title VII, and that the Commission's alleged violation of Paragraph (e) harmed Merrill Lynch by denying its right under Title VII to notice of a charge prior to investigation by EEOC. But that right does not exist under FLSA. It may be extended to the Equal Pay Act only if Paragraph (e) is read as creating such a right, a reading which we have seen is inconsistent with the FLSA and the Reorganization Act itself. Since the Commission had authority under FLSA to conduct an Equal Pay investigation on its own initiative and without having received any complaint, *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 201, 66 S.Ct. 494, 501, 90 L.Ed. 614 (1946), Merrill Lynch has not been harmed by the Commission's failure to proceed under Title VII. It follows that any violation of Paragraph (e) was harmless and did not bar the Commission from further administrative action. *EEOC v. Kimberly–Clark Corp.,* 511 F.2d 1352, 1360–1361 (6th Cir.1975); cert. den., 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368.

There are other flaws in Merrill Lynch's position. The Commission is not bound by procedures or regulations where they constitute an internal method of viewing charges, *EEOC v. Bay Shipbuilding Corp.,* 25 EPD ¶ 31,635 at p. 19,692–93 (E.D.Wisc.1981), [Available on WESTLAW, 1981 WL 129], aff'd., 668 F.2d 304, (7th Cir.1981), or "internal guidelines for use of the agency", *Sunbeam Appliance Co. v. Kelly,* 532 F.Supp. 96, 28 E.P.D. ¶ 32,539, (N.D.Ill.1982 at p. 24,392) (Bua, J.). *See also Hall v. EEOC,* 456 F.Supp. 695, 701 (N.D.Cal.1978); *EEOC v. National Cash Register Co.,* 405 F.Supp. 562, 569–572 (N.D.Ga.1975). And if Paragraph (e) were read as creating the substantive right for which Merrill Lynch contends, and as eliminating EPA complainants' substantive right to confidentiality, it would be invalid because it was not adopted in accordance with the notice and public comment requirements of the Administrative Procedure Act. 5 U.S.C. § 553. *Hall,* 456 F.Supp. at 701.

Merrill Lynch's 1985 brief appears to state a narrower position, that a Title VII notice of charge is required before the Commission can conduct an equal pay investigation not in every EPA case but only where the Commission receives a document which satisfies the requisites of a Title VII charge. Merrill Lynch has not cited any statute or case which supports that contention. It is inconsistent with the cases discussed earlier which hold that Title VII and the Equal Pay Act are independent statutes and relief may be sought under either or both of them. *Laffey v. Northwest Airlines,* 567 F.2d at 445. Paragraph (e) itself does not support a distinction between written complaints which meet the requirements of a Title VII charge and those which do not. If it did, such a narrowed Paragraph (e) would still be inconsistent with the independent character of the Equal Pay Act and Title VII and the recognized right to pursue relief under either or both statutes. Paragraph (e), so interpreted, would also be invalid and ineffective to create the claimed right to notice for the reasons explained above in discussing Merrill Lynch's 1982 version of this argument.

Merrill Lynch has also argued that since Title VII brought EEOC into existence, the transfer of Equal Pay Act authority to

EEOC must have been intended by Congress to be subject to Title VII investigative requirements generally, including the notice of charge requirement in § 706(b). The only supporting authority cited by Merrill Lynch, *EEOC v. Home of Economy, Inc.*, 539 F.Supp. 507 (D.N.D.1982), held that the Commission could not sue to enforce the EPA without first attempting conciliation as required by Title VII. However that decision was reversed. *EEOC v. Home of Economy, Inc.*, 712 F.2d 356 (8th Cir.1983). The Court of Appeals recognized that after Reorganization Plan No. 1 the EPA and Title VII must still be treated as distinct, with each statute applied according to its own terms. The court concluded that the terms of the Equal Pay Act contained no conciliation requirement and found nothing to the contrary in Reorganization Plan No. 1 or its legislative history. The court concluded that the transfer of EPA authority to EEOC did not impose Title VII conciliation requirements on the handling of EPA cases. See also *County of Washington v. Gunther*, 452 U.S. 161, 175 n. 14, 101 S.Ct. 2242, 2251 n. 14, 68 L.Ed.2d 751 (1981), in which the Supreme Court said that the EPA "unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." *Accord, Ososky v. Wick*, 704 F.2d 1264 (D.C.Cir.1983).

To conclude, whatever Paragraph (e) did mean, and the Commission apparently recognized in its 1981 comment that it was poorly conceived, it did not create the substantive right for which Merrill Lynch contends. EEOC was not required to give Merrill Lynch a Title VII notice of charge before commencing an investigation or requesting the disputed report under the EPA and FLSA.

3. *Does An Equal Pay Act Investigation by EEOC Without A Title VII Notice of Charge Violate The Reorganization Act? (the "New Function" Question)*

Section 905(a) of the 1977 Reorganization Act, 5 U.S.C. § 905(a) provides:

A reorganization plan may not provide for, and a reorganization under this chapter may not have the effect of—

(4) authorizing an agency to exercise a function which is not expressly authorized by law at the time the plan is transmitted to Congress ...

Under Title VII, "the EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation'". *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984). (footnote omitted).

In FLSA, Congress used " 'the most explicit language' which leaves no room for questioning Congress' intent ... of ... authoriz[ing] investigation ... to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if ... the facts thus discovered should justify doing so." *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 201, 66 S.Ct. 494, 501, 90 L.Ed. 614.

Merrill Lynch argues that because EPA violations are also Title VII violations, EEOC, by using its authority under EPA, can now effectively conduct Title VII investigations without the filing of a charge of discrimination, a function which was not expressly authorized by law at the time that Reorganization Plan No. 1 was transmitted to Congress. Merrill Lynch concludes that in order to avoid creating such a "new function" in violation of § 905(a)(4) of the Reorganization Act, the Commission's authority to carry out EPA investigations must be limited to instances in which a charge of sex-discrimination has been filed in accordance with Title VII. That would avoid what Merrill Lynch terms a "net increase in federal power". The argument is far reaching. If it is accepted, the plenary power to investigate possible EPA violations on the initiative of the enforcing agency, a power which existed under FLSA prior to Reorganization Plan No. 1, would no longer exist.

EEOC has disclaimed any intent to conduct a Title VII investigation or bring a

Title VII charge against Merrill Lynch based on the EPA complaint it has received. And there is nothing in the record indicating that the Commission has conducted or threatens to conduct a Title VII investigation based on that complaint. The disputed report was requested under the FLSA. The Commission's complaint in this case invokes only EEOC's authority under the EPA and FLSA. Therefore the question raised by Merrill Lynch under § 905(a)(4) of the Reorganization Act is not presented in this case. There will be time to address that question if and when EEOC attempts to use its authority under § 11(c) to conduct a Title VII investigation or use information obtained in an EPA investigation as the basis for proceedings under Title VII. A court faced with such facts may have to consider the meaning of § 905(a)(4) of the Reorganization Act, how to accommodate the separate enforcement schemes in EPA and Title VII and the effect of the ratification of Reorganization Plan No. 1 "as law" by Congress in 1984.

4. *Are The Equal Pay Act Record Keeping and Reporting Regulations Adopted by EEOC Invalid Because They Were Adopted Without Publication for Public Comment?*

Merrill Lynch contends that Department of Labor regulations governing employer record keeping and reporting were improperly adopted by EEOC in 1979 and 1981. It is undisputed that they were adopted without prior publication and opportunity for public comment. Merrill Lynch argues that such publication was required by three separate laws, § 709(c) of Title VII, Executive Order 12067 and § 553 of the Administrative Procedure Act. Because those regulations are cited as the basis of the Commission's complaint in this case, Merrill Lynch maintains that it is not required to submit the report in dispute. This is also a far reaching claim. If it is correct, then since 1979 the Commission has had no authority to require employers to keep

records or render reports under the Equal Pay Act.

Paragraph (d) of the transition procedures adopted by the Commission on June 27, 1979, 44 Fed.Reg. 38670–38671, provided:

Employers having employees subject to the Act are required to keep records in accordance with U.S. Department of Labor regulations found at 29 C.F.R. Part 516 (Records to Be Kept by Employers Under the FLSA). The regulations of that Part are adopted herein by reference.[10]

The same provision was adopted as part of the permanent regulations approved by the Commission effective January 19, 1981, 46 Fed.Reg. 4888, 29 C.F.R. § 1620.21(a) (1985).

Among the Department of Labor regulations thus adopted is 29 C.F.R. § 516.8 (1985), which provides:

Each employer required to maintain records under this part shall make such extension, recomputation, or transcription of his records and shall submit to the Wage and Hour Division such reports concerning persons employed and the wages, hours, and other conditions and practices of employment set forth in his records as the Administrator or his duly authorized and designated representative may request in writing.

*Section 709(c)*

The first publication requirement invoked by Merrill Lynch is § 709(c) of Title VII which provides:

Every employer, employment agency, and labor organization subject to this title shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the

---

10. Those regulations continue as regulations of the Department of Labor, Wage & Hour Division applicable to other provisions of the Fair

Labor Standards Act. See 29 C.F.R. Ch. V, Pt. 516 (1985).

enforcement of this title or the regulations or orders thereunder ... 42 U.S.C. § 2000e–8(c).

Merrill Lynch says that § 709(c) became applicable to the Commission's EPA record keeping and reporting regulations as a result of 29 C.F.R. § 1620.23(c) (1985), one of the permanent EPA regulations issued by the Commission in 1981. That regulation provides:

Whenever the Commission is investigating a charge or allegation relating to a possible violation of one of the statutes which it administers and finds a violation of one or more of the other statutes which it administers, the Commission may seek to remedy such violation in accordance with the procedures of all relevant statutes.

■ Merrill Lynch reads § 1620.23(c) as authorizing the use of EPA reports obtained under § 11(c) of FLSA to enforce Title VII. Merrill Lynch argues that EEOC should not be permitted to evade the public hearing requirement of § 709(c) by procuring reports prescribed under § 11(c) and using them to enforce Title VII.

Whether Merrill Lynch's interpretation of § 1620.23(c) is correct and, if so, whether EEOC's EPA record keeping regulations were adopted in violation of § 709(c) need not be decided in this case. Merrill Lynch does not have standing to challenge the Commission's regulations on the ground that the report in dispute *might be* used in a Title VII enforcement proceeding. There is no indication that the Commission has used or threatened to use the EPA report requested here in any Title VII proceeding against Merrill Lynch.[11] Merrill Lynch simply has not been affected, let alone harmed, by the scenario which it conjectures as a possibility. Whether the reason is viewed as a lack of standing, *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–38, 96 S.Ct. 1917,

1923–1924, 48 L.Ed.2d 450 (1976), or as an absence of ripeness for adjudication, *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 152–153, 87 S.Ct. 1507, 1515–1516, 1517–1518, 18 L.Ed.2d 681 (1967), this challenge to the validity of the Commission's Equal Pay Act regulations seeks to raise an issue which is not presented on the facts of this case.

### Executive Order 12067

■ Merrill Lynch next argues that the Commission's EPA record keeping and reporting regulations are invalid because they were adopted without compliance with Executive Order 12067, issued on June 30, 1978. Section 1–305 of that Order provided,

Before promulgating significant rules, regulations, policies, procedures or orders involving equal employment opportunity, the Commission and affected departments and agencies shall afford the public an opportunity to comment. 43 Fed.Reg. 28967, 28969, reprinted in 1978 U.S.Code Cong. & Ad.News 9726, 9728.

It is contended that this provision of Executive Order 12067 implemented § 901(c) of the Reorganization Act of 1977 which states:

It is the intent of Congress that the President should provide appropriate means for broad citizen advice and participation in restructuring and reorganizing the executive branch. 5 U.S.C. § 901(c).

Executive Order 12067 does not, however, provide a basis for invalidating the regulations adopted by the Commission for two reasons. First, the Commission simply adopted existing Department of Labor regulations by the device of incorporating them by reference, without any change beyond the implied modification that after July 1, 1979 compliance would be enforced

---

11. Merrill Lynch cites Pars. 9600 and 9610 of EEOC's Compliance Manual as evidence of the Commission's announced intention to integrate enforcement of EPA and Title VII. While Par. 9610 contemplates concurrent filing of complaints under EPA and Title VII in appropriate cases it also states that concurrent filing should

not occur when the complainant requests confidentiality. The court also notes that Pars. 9600 and 9610 were superseded by consolidated procedures released by the Commission in September 1984. See EEOC Compliance Manual (Commerce Clearing House) ¶ 152 et seq.

by EEOC rather than the Department of Labor. That change was accomplished by Reorganization Plan No. 1 itself. EEOC's regulation which merely confirmed that change was therefore not a "significant" regulation under Executive Order 12067.

Second, under the carryover provisions of Section 907(a) of the 1977 Reorganization Act, quoted in Part 2 above, existing Department of Labor record keeping and reporting requirements applicable to the Equal Pay Act were automatically continued in effect except as modified by Reorganization Plan No. 1. Since § 907(a) automatically continued pertinent FLSA regulations in effect, while vesting their administration in the EEOC, "significant" regulations in the Executive Order should be read as referring to new or modified regulations and not to existing regulations which were continued in effect by that statute. On July 1, 1979, when transfer of EPA enforcement authority to the Commission became effective, employers were not relieved of their Equal Pay Act record keeping and reporting obligations. The combined effect of § 907(a) and Reorganization Plan No. 1 was to require continued compliance with existing regulations, except that enforcement authority was transferred to the Commission. Again, the EEOC regulations in question merely confirmed that result. In these circumstances the Commission's adoption of those regulations was not a significant administrative action under Executive Order 12067.

### Administrative Procedure Act

Finally, Merrill Lynch invokes the Administrative Procedure Act requirement of notice of proposed rule making with an opportunity for interested persons to comment. 5 U.S.C. § 553. While the definition of "rule" in 5 U.S.C. § 551(4) includes any "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy ...", § 553(b)(A) exempts from the rule making requirements of § 553 all "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice ..." For a general

review of this thorny patch see *Batterton v. Marshall,* 648 F.2d 694 (D.C.Cir.1980).

Merrill Lynch has not cited any case in which the rule making requirements of § 553 have been applied to agency action which merely affirmed existing rules. While distinguishable on their facts, two cases have held that agency action which "simply 'reminds' affected parties of existing duties" is not subject to the requirements of § 553. *Citizens To Save Spencer County v. EPA,* 600 F.2d 844, 876 n. 153 (D.C.Cir.1979) and *Yale Broadcasting Co. v. FCC,* 478 F.2d 594, 599 (D.C.Cir.1973). As in *Citizens To Save Spencer County,* the EEOC regulations here "create[d] no new law." 600 F.2d at 877. An interpretative rule "is merely one that clarifies or explains an existing rule or statute." *Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir.1980). *See also Matters of Worksite Inspection,* 481 F.Supp. 491, 494 (D.Me.1979) (amendment to OSHA regulation which merely clarifies, without substantively modifying, an existing regulation would not have a substantive impact on those regulated and was, therefore, an "interpretative rule" exempt under § 553). By parity of reasoning, the EEOC regulations at issue here, which merely reaffirmed the continued applicability of existing FLSA regulations, were interpretative rules exempt from the rule making requirements of the Administrative Procedure Act.

### 5. Defendant's Motion to Compel

In April, 1983, Merrill Lynch filed a Motion to Compel Discovery seeking compliance with a document production request and interrogatories it had served on the Commission. The production request and interrogatories sought identifying information about and copies of (1) any complaint filed by an employee of Merrill Lynch that defendant failed to accord equal pay to male and female employees at its Jackson Boulevard facility; (2) documents relating to changes in EEOC's 1981 regulations relating to whether charges filed with the Commission will be deemed to be filed under all laws administered by the Commission; and (3) documents relating to EEOC's policy on intake of Equal Pay Act charges

or complaints between July 1979 and January 1981. By order dated April 29, 1983, Judge Nordberg continued generally a hearing on defendant's Motion to Compel Discovery.

Merrill Lynch contends that its inability to obtain full discovery on the precise nature of the EPA complaint EEOC received in 1979 precludes summary judgment for the Commission. Merrill Lynch says that information regarding the complaint received by the Commission is relevant to a major issue raised by the cross-motions for summary judgment—whether a Title VII charge has been filed with the Commission. Merrill Lynch suggests that resolution of that question will affect its legal arguments that Reorganization Plan No. 1 created a "new function" in violation of the Reorganization Act of 1977, and that the Commission was required under Title VII and its own regulations to give notice to the defendant of the circumstances of the alleged violation before it could commence an Equal Pay Act investigation. Both of those arguments have been rejected as a matter of law on the assumption that the complaint received by the Commission did satisfy the requirements of a Title VII charge.[12] Accordingly, the discovery sought with respect to that complaint is not relevant to any issue remaining in this case.

The same conclusion is indicated for defendant's discovery requests relating to the regulations dealing with whether charges are deemed filed under all laws administered by the Commission and the Commission's intake policies. Merrill Lynch's argument with respect to the regulations in question has been rejected as a matter of law. See Part 2 *supra.* And the Commission's intake policies for Equal Pay complaints were cited by Merrill Lynch in arguing an issue which Merrill Lynch lacks standing to raise. See text *supra* at n. 11.

Apart from the foregoing, to require the Commission to disclose the complaint it received, even with the complainant's name excised, presents a substantial risk that the complainant's identity would be revealed in violation of the long-standing regulation assuring confidentiality to EPA complainants. 29 C.F.R. § 800.164 (1985).

If the order referring this case to the undersigned includes authority to rule on defendant's Motion to Compel, then for the foregoing reasons that motion is hereby denied. If that motion is outside the scope of the reference, then it is recommended that defendant's Motion to Compel be denied.

### Conclusion

For the foregoing reasons, Merrill Lynch's challenges to Reorganization Plan No. 1 and application of the Ratification Act in this case are rejected, as are its contention that EEOC enforcement of the Equal Pay Act is subject to Title VII notice of charge requirements and its challenge to EEOC's adoption of long-standing FLSA employer record keeping and reporting requirements. There are no disputed questions of material fact and the Commission is entitled to judgment as a matter of law ordering Merrill Lynch to submit required reports to EEOC. Merrill Lynch's motion for summary judgment should be denied and EEOC's motion for summary judgment should be granted.

The foregoing constitutes the Report and Recommendation of the undersigned.

Under 28 U.S.C. 636(b)(1) and Fed.R. Civ.P. 72(b), counsel have 10 days from the date hereof to file written objections to this Report and Recommendation with Judge Norgle.

Dated October 2, 1986

---

12. Merrill Lynch cites *Casavantes v. Calif. State Univ., Sacramento,* 732 F.2d 1441 (9th Cir.1984) holding that under some circumstances an intake questionnaire received by the Commission can be treated as a Title VII charge. *Casavantes* has been rejected in this circuit. *See Proffit v.*

*Keycom Electronic Pub.,* 625 F.Supp. 400 (N.D. Ill.1985) (Shadur, J.) and *Brooks, et al. v. Illinois Range Co.,* 85 C 7969 (N.D.Ill. Slip Op. June 13, 1986 [Available on WESTLAW, 1986 WL 7081], available on Lexis) (Kocoras, J.).